2 Roger J. Magnuson, *Shareholder Litig.* § 14.08, at 9–10 (1994) (footnotes omitted).

I would allow a corporation to avoid disclosure if, taking into account its legitimate interests and the legitimate needs of the ESOP Plan participant, there is good cause to maintain confidentiality. *See, e.g.,* S.C. Code § 33–16–102(c) (corporation need not permit shareholder to inspect books and records if inspection request is not "made in good faith and for a proper purpose"); Magnuson, *supra,* at 10 (some states "recognize a legitimate corporate interest in protecting certain kinds of material, 'confidential information' useful to competition for example, from indiscriminate shareholder inspection") & 13 (access may be denied if shareholder demands access out of "idle curiosity," to aid a competitor, or for "a vexatious and hostile purpose"). Disclosure of financial information to its ESOP Plan participants, however, is not necessarily something an employer should fear. *See* Timothy L. O'Brien, *Company Wins Workers' Loyalty by Opening its*

*Books,* Wall St. J., Dec. 20, 1993, at B1 (company's stock price grew from 10 cents to $18.60 in ten years since adoption of open-book policy; sales and employment also grew significantly).

In this case, Lundy has made no concrete showing of any need for secrecy. Some of the material the plaintiffs seek already has been made available to other Lundy shareholders. Shareholder Elton C. Parker, Jr., for example, was provided with Lundy's consolidated financial statements and schedules after requesting them, even though he did not indicate why he wanted the information or for what purposes he intended to use it. Furthermore, the plaintiffs' request was made for a proper purpose, namely, to find out why the assessed value of their ESOP shares fell more than 40 percent in a year when the company was profitable. Thus, I believe the plaintiffs are entitled to the appraisal reports and supporting documentation.

\* \* \*

I respectfully dissent to the extent I have indicated. The majority's narrow construction of § 104(b)(4) cannot be squared with Congress's goal of giving employees maximum power to monitor the security of their pension savings.

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jose Antonio BELTRAN–ORTIZ,
Defendant–Appellant.**

No. 95–5439.

United States Court of Appeals,
Fourth Circuit.

Argued June 6, 1996.

Decided Aug. 7, 1996.

---

**ARGUED:** Thomas Norman Cochran, Assistant Federal Public Defender, Greensboro, North Carolina, for Appellant. Timika Shafeek, Assistant United States Attorney, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Walter C. Holton, Jr., United States Attorney, Lisa B. Boggs, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.

Before MURNAGHAN, WILKINS, and LUTTIG, Circuit Judges.

Vacated and remanded with instructions by published opinion. Judge WILKINS wrote the opinion, in which Judge MURNAGHAN and Judge LUTTIG joined.

## OPINION

WILKINS, Circuit Judge:

Jose Antonio Beltran–Ortiz appeals the sentence imposed by the district court, arguing that the Government breached his plea agreement by failing to debrief him prior to sentencing and by failing to recommend a sentence at the low end of his correct guideline range. The Government acknowledges that it breached Beltran–Ortiz' plea agreement by failing to debrief him, but argues that resentencing is unnecessary because he received the benefit of his bargain. We reject this argument, vacate Beltran–Ortiz' sentence, and remand for resentencing after the Government has complied with the plea agreement.

## I.

During a routine drug interdiction investigation at the Amtrak station in Greensboro, North Carolina, officers approached Beltran–Ortiz as he exited a train from New York, identified themselves, and asked if he was carrying drugs. When he responded that he was, the officers requested permission to search a bag he was carrying. Acting pursuant to Beltran–Ortiz' consent, the officers discovered 388.7 grams of cocaine base. Beltran–Ortiz subsequently entered into a plea agreement under which he agreed to plead guilty to one count of possession with the intent to distribute cocaine base. *See* 21 U.S.C.A. § 841(a)(1) (West 1981). Paragraph 5(a) of the plea agreement provided in pertinent part:

> [U]pon the acceptance by the Court of a guilty plea by the defendant ... to the [i]ndictment herein, the United States of America agrees that once the Court has determined the applicable sentencing

guidelines range ... the Government will recommend to the Court that the defendant should receive a sentence at the low end of the guideline range if the defendant, upon debriefing by government agents, is completely forthright and truthful regarding the offense charged in [the indictment.] J.A. 9. Despite the language in the plea agreement contemplating that Beltran–Ortiz would be debriefed, the Government failed to do so prior to his sentencing.

In the absence of being debriefed and in an attempt to qualify for sentencing under 18 U.S.C.A. § 3553(f) (West Supp.1996) and United States Sentencing Commission, *Guidelines Manual*, § 5C1.2 (Nov.1994) (hereinafter "the safety valve provision"), Beltran–Ortiz submitted a proffer letter prepared by counsel to the Government. This letter purported to explain how Beltran–Ortiz became involved in the transportation of cocaine base into North Carolina; the extent of his involvement in the offense; and the name, address, and telephone number of the individual from whom he obtained and for whom he was transporting the drugs.

The presentence report recommended that Beltran–Ortiz receive a base offense level of 34, *see* U.S.S.G. § 2D1.1(c)(3), and a three-level reduction for acceptance of responsibility due to his cooperation with law enforcement officers following his arrest and with probation officers during completion of the presentence report, *see* U.S.S.G. § 3E1.1. Combined with his Criminal History Category of I, Beltran-Ortiz' resulting guideline range was 108 to 135 months imprisonment. *See* U.S.S.G. Ch. 5, Pt. A. Application of the statutory ten-year mandatory minimum sentence, however, would render his adjusted guideline range to be 120 to 135 months. *See* 21 U.S.C.A. § 841(b)(1)(A)(iii) (West Supp. 1996); U.S.S.G. § 5G1.1(c).

■ The presentence report, however, did not address the application of the safety valve provision, which directs a district court to impose a sentence within the applicable guideline range, but without regard to any statutory minimum sentence if a defendant meets five requirements. 18 U.S.C.A. § 3553(f); U.S.S.G. § 5C1.2. These five requirements are:

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C.A. § 3553(f)(1)-(5); U.S.S.G. § 5C1.2(1)-(5).[1] It is undisputed that Beltran–Ortiz satisfied the first four of these requirements. Thus, the only question concerning his entitlement to sentencing under the safety valve provision was whether he had satisfied the final requirement that he truthfully disclose all of the information and evidence he had to the Government.

During the sentencing hearing, defense counsel notified the court that the Government had failed to debrief Beltran–Ortiz as contemplated by the plea agreement. In

[1]. If a district court finds that all of the factual requirements have been met, application of the safety valve provision is mandatory. U.S.S.G. § 5C1.2 ("In the case of an offense under 21 U.S.C. § 841, § 844, § 846, § 960, or § 963, the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5). ...").

response to questions by the district court to counsel for the Government concerning the plea agreement, the Assistant United States Attorney acknowledged that the Government had agreed to debrief Beltran–Ortiz, but that it had not done so. Recognizing this failure, the Government proposed to recommend that in any event Beltran–Ortiz be sentenced at the low end of whatever guideline range the court determined to be applicable. The district court then questioned whether, in light of the Government's position, Beltran–Ortiz desired to pursue the matter further. Although defense counsel initially responded that he did not, counsel quickly explained that no further pursuit of the issue was necessary if the Government intended to recommend a sentence of 108 months imprisonment—the low end of the guideline range when the safety valve provision was applied.

The Government, however, opposed application of the safety valve provision, cataloging its efforts to verify the information BeltranOrtiz had provided in his proffer letter and representing that despite its attempts, "at this point we cannot verify his truthfulness." J.A. 30. The district court refused to apply the safety valve provision. Although noting that Beltran–Ortiz may well have been telling the truth, and specifically declining to find that he was not, the court reasoned that it "simply [could not] find enough evidence to support a finding that it [was] the truth." J.A. 39.

Upon ruling that the safety valve provision did not apply, the district court imposed a sentence of 120 months imprisonment. From this sentence Beltran–Ortiz appeals, claiming that the Government breached its plea agreement by failing to debrief him and in failing to recommend a sentence of 108 months, the low end of the guideline range that would have resulted from application of the safety valve provision.

## II.

■ Beltran–Ortiz first contends that his sentence must be vacated and a remand must be ordered because the Government agreed in the plea agreement to debrief him and it failed to do so.[2] The Government con cedes before this court, as it did before the district court, that the plea agreement contemplated that it would debrief Beltran–Ortiz, but it argues that the benefit for which Beltran–Ortiz bargained in the plea agreement was a recommendation for a sentence at the low end of the guideline range and that Beltran–Ortiz received this benefit when it recommended a sentence of 120 months. Thus, the Government maintains, resentencing is unnecessary. This argument, however, fails to recognize that debriefing is a valuable benefit to a defendant who is seeking to qualify for application of the safety valve provision. And, "when a [guilty] plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971).[3]

**2.** Before turning to the merits of his argument, we note that the Government argues that because Beltran–Ortiz represented to the district court that he did not wish to pursue the failure of the Government to debrief him, we may review this issue only for plain error. Although the transcript of the sentencing hearing is susceptible to the Government's interpretation, we reject its argument because despite the initial representation that Beltran–Ortiz did not wish to pursue the matter further, defense counsel immediately qualified that the representation was contingent upon the Government's recommendation of a sentence of 108 months imprisonment. Further, during subsequent argument concerning the application of the safety valve provision, defense counsel reiterated that Beltran–Ortiz had made the best showing that he could in light of the Government's failure to debrief him. Consequently, defense counsel adequately brought to the attention of the district court the Government's failure to debrief him.

**3.** Counsel for Beltran–Ortiz admitted during oral argument that the application of the safety valve provision was not specifically contemplated when the parties entered the plea agreement, and therefore an argument could be made that the obligation by the Government to debrief Beltran–Ortiz could only have formed an inducement for the plea to the extent that the obligation bore on the Government's promise to recommend a sentence at the low end of the guideline range. Nonetheless, the Government's agreement to debrief Beltran–Ortiz formed a portion of the consideration the Government supplied in return for BeltranOrtiz' agreement to plead guilty. And, for this reason, the Government must abide by its agreement even though Bel-

The safety valve provision premises its applicability on a defendant's having truthfully disclosed all information and evidence to the Government. *See* 18 U.S.C.A. § 3553(f)(5); U.S.S.G. § 5C1.2(5). And, we have recognized that the burden rests on the defendant to prove that the prerequisites for application of the safety valve provision, including truthful disclosure, have been met. *United States v. Ivester*, 75 F.3d 182, 184–85 (4th Cir.1996) (holding that it is not sufficient that a defendant stands ready to disclose fully if the Government were to approach him to seek information; the plain language of the safety valve provision requires that a defendant must demonstrate that he has fully and truthfully disclosed even if he has never been approached by the Government), *cert. denied,* — U.S. ——, 116 S.Ct. 2537, 135 L.Ed.2d 1060 (1996); *see, e.g., United States v. Adu*, 82 F.3d 119, 124 (6th Cir.1996) (burden on defendant to prove full disclosure was made to be entitled to application of the safety valve provision). Further, the Government may offer a recommendation to the district court on the application of the provision. *See* U.S.S.G. § 5C1.2, comment. (n.8). Debriefing by the Government plays an important role in permitting a defendant to comply with the disclosure requirement of the safety valve provision and in convincing the Government of the fullness and completeness of a defendant's disclosure, thereby encouraging a favorable recommendation. *See United States v. Montanez*, 82 F.3d 520, 523 (1st Cir.1996) (recognizing that as a practical matter a defendant who is not debriefed, but who instead relies on a proffer letter, is seriously disadvantaged in obtaining favorable treatment under the safety valve provision). Accordingly, we view the promise by the Government to debrief Beltran–Ortiz as a valuable benefit providing consideration for his plea.[4]

### III.

Beltran–Ortiz next maintains that the Government breached the provision of the plea agreement requiring that it recommend a sentence at the low end of the guideline range because it did not recommend a sentence of 108 months, *i.e.,* a sentence at the low end of the guideline range calculated after applying the safety valve provision. We disagree. The plea agreement unambiguously provides that the Government will recommend a sentence at the low end of the guideline range "once the Court has determined the applicable sentencing guidelines range." J.A. 9. The promise to recommend a sentence at the low end of the guideline range plainly did not require the Government to make a recommendation until the final guideline range was calculated. Thus, the Government did not breach its plea agreement in this manner.

### IV.

For the reasons stated above, we conclude that Beltran–Ortiz' sentence must be vacated. On remand, the Government shall comply with the plea agreement by debriefing Beltran–Ortiz prior to resentencing. The district court shall then determine whether Beltran–Ortiz has met the requirements of 18 U.S.C.A. § 3553(f) and, following such determination, sentence accordingly.

*VACATED AND REMANDED WITH INSTRUCTIONS.*

---

tran–Ortiz may receive a collateral benefit not initially contemplated by the parties.

4. Our holding is a narrow one. We do not hold that the Government must debrief all defendants. And, district courts remain free to reject a defendant's claim of full disclosure for credibility reasons, recognizing that in some instances the most reasonable explanation for why information cannot be verified is because that information is

false. Nevertheless, when the Government promises in a plea agreement to debrief a defendant, it may not thereafter simply refuse to do so and then, having deprived the defendant of his best opportunity for attempting to obtain this favorable treatment, argue that the defendant is not entitled to sentencing under the safety valve provision.