UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 98-4494

DARREN LAMONT NORFLEET,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(CR-97-37-MU)

Submitted: February 16, 1999

Decided: March 22, 1999

Before WILKINS, TRAXLER, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Eric A. Bach, Charlotte, North Carolina, for Appellant. Robert J. Hig-
don, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Char-
lotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Darren Lamont Norfleet was convicted by a jury of conspiring to possess with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 846 (1994), and was sentenced to 120 months' imprisonment. On appeal, Norfleet alleges that the district court erred in denying his motion for a judgment of acquittal at the close of the Government's evidence. He further maintains that the court erred in denying him relief under the "safety valve" provision of 18 U.S.C. § 3553(f). Finding no error, we affirm.

The evidence at trial disclosed that on February 13, 1997, Trooper Cardwell of the North Carolina Highway Patrol stopped the vehicle in which Norfleet was a passenger after observing that the driver was speeding. The vehicle bore a personalized Virginia license tag. Cardwell approached the vehicle from the passenger side and tapped on the window. From the passenger side window, Cardwell asked the driver, Starlene Patterson, to produce a driver's license. She complied, producing a Virginia license and registration. Later, while sitting in Cardwell's vehicle, Patterson became noticeably nervous. Upon questioning, Patterson stated that she had been visiting her aunt for a couple of days in Charlotte, North Carolina. Although she first maintained that the passenger was her brother, she later claimed the passenger was a friend. After denying possessing any narcotics, weapons, or stolen items in her vehicle, Patterson consented in writing to the search of the vehicle.

Cardwell proceeded to question Norfleet. Norfleet provided Cardwell with a Virginia driver's license and stated that he was Patterson's friend. He maintained that he traveled with Patterson to North Carolina to visit her aunt for a couple of hours. At this time, Cardwell informed Norfleet that Patterson had consented to the search of the vehicle. Upon conducting a search of the vehicle, Cardwell found a stereo "boom box" in the rear cargo area. Upon closer inspection of the speakers, Cardwell found gray duct tape packages which further investigation revealed to contain marijuana and cocaine. In light of Cardwell's findings, he placed Norfleet under arrest.

2

After receiving his Miranda rights, Norfleet told Cardwell that he and Patterson drove from Norfolk, Virginia, to New York, and then returned with a couple of friends to Norfolk. They then returned again to New York, and left after a couple of hours, towards Charlotte. According to Norfleet, before they left Charlotte, Patterson's nephew placed two duffle bags in the vehicle.

Cardwell turned the investigation over to Drug Enforcement Administration agent David Dongilli. Again, Norfleet was informed of his Miranda rights. Norfleet told Dongilli that he and Patterson were friends. While staying with her, Patterson's nephew, known as "Little Man," called Patterson and asked her to drive to New York City. Patterson asked Norfleet to accompany him, and he agreed. Norfleet maintained that they traveled in two vans, one driven by Patterson, and the other by Little Man. After arriving in New York, Little Man became angry, complaining that he left money behind in Norfolk. In light of this, Little Man, Patterson, and Norfleet returned to Norfolk. Upon their return, Norfleet learned that the amount of money Little Man was missing was $28,000. When Little Man could not find the money in Norfolk, he called his contact in New York, who then found the cash in Little Man's van. The three returned to New York the next day.

According to Norfleet, he and Patterson shopped for several hours in New York and then met Little Man. Little Man placed a stereo boom box in Patterson's vehicle and placed another similar box in his own van. The three then proceeded to North Carolina. Norfleet and Patterson took turns driving the van. In North Carolina, the group went to a house where they unloaded the stereo boxes from their respective vans and placed them in the house. Thereafter, Little Man and Patterson returned one of the stereo boxes to Patterson's van. Norfleet and Patterson then proceeded to Virginia. During the course of this trip they were stopped by Cardwell. During his conversation with Dongilli, Norfleet denied knowledge of the drugs initially, but said that after Little Man stated that he lost $28,000, "he realized what was going on."

A jury convicted Norfleet of conspiracy to possess with intent to distribute cocaine base. The court sentenced Norfleet to 120 months' imprisonment. Norfleet filed a timely notice of appeal.

3

On appeal, Norfleet alleges that the court erred in denying his motion for judgment of acquittal at the close of the Government's evidence. Norfleet initially maintains that the Government failed to prove that he knowingly and willfully joined the conspiracy. Norfleet further claims that the Government failed to prove that he constructively possessed the cocaine base. We address each claim in turn.

A denial of a Fed. R. Crim. P. 29 motion for acquittal is reviewed under a sufficiency of the evidence standard. See United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir. 1992)."To sustain a conviction the evidence, when viewed in the light most favorable to the government, must be sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt." See United States v. Brewer, 1 F.3d 1430, 1437 (4th Cir. 1993); see Glasser v. United States, 315 U.S. 60, 80 (1942). The Government is entitled to all reasonable inferences from the facts established to those sought to be established. See United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

To prove a drug conspiracy, the prosecution must show that: "(1) an agreement to possess [the drugs] with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy." See United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) (en banc), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3586 (U.S. Feb. 24, 1997) (No. 96-6868). Each defendant need not know the details of the conspiracy's structure and organization or the identities of every conspirator. See id. at 858. The Government may prove that a conspiracy existed by circumstantial evidence; it need not, and normally will not, be proved by direct evidence. See id. at 857. A jury may find knowledgeable, voluntary participation from presence when presence is such that it would be unreasonable for anyone other than a knowledgeable participant to be present. See United States v. Mosquera, 779 F.2d 628, 629-30 (11th Cir. 1986). Once the existence of a conspiracy is established, only a slight link between a defendant and the conspiracy is needed to support a conviction. See Brooks, 957 F.2d at 1147.

We find that there was sufficient evidence to support the jury's finding that Norfleet's participation was knowing and voluntary. The

evidence at trial disclosed that there was a conspiracy to transport cocaine base between New York and North Carolina for the purpose of distribution. By his own admission, Norfleet stated that he was aware of the drug conspiracy when he returned to Norfolk with Little Man and was told that Little Man was missing $28,000. After learning of the conspiracy, Norfleet continued to travel with Patterson to New York and then to North Carolina, sharing in the driving. While we agree that Norfleet's role was minimal, we find sufficient evidence to support the jury's finding that Norfleet's participation in the conspiracy was knowing and voluntary.

We next address Norfleet's argument that the Government failed to prove that he constructively possessed the cocaine base. "Constructive possession exists when the defendant exercises, or has the power to exercise, dominion and control over the item[,]" see United States v. Laughman, 618 F.2d 1067, 1077 (4th Cir. 1980), and has knowledge of the item's presence. See United States v. Zandi, 769 F.2d 229, 235 (4th Cir. 1985). Both of these components may be established by circumstantial evidence. See id.

Again, Norfleet admitted that he was aware of the illegal drug activities when he, Patterson, and Little Man returned to Norfolk. It was after he agreed to accompany them back to New York, that the drugs were placed in the vans. Even after learning of the group's illegal activity, he continued to take turns driving one of the vans carrying packages of cocaine. Under these circumstances, we find sufficient evidence that the illegal drugs were in Norfleet's constructive possession.

For the reasons stated above, we reject Norfleet's argument that there was insufficient evidence to show that his participation was knowing and voluntary and that he constructively possessed the cocaine base. Accordingly, we find no error in the district court's denial of his motion for judgment of acquittal.

Norfleet's last argument is that the district court erred in failing to grant him relief under the "safety valve" provision, see 18 U.S.C.A. § 3553(f) (West Supp. 1998); United States Sentencing Guidelines Manual § 5C1.2 (Nov. 1997), given his alleged cooperation with the Government at the time of his arrest and before sentencing. A defen-

5

dant has the burden of proving that he qualifies for application of the "safety valve" provision. See United States v. Beltran-Ortiz, 91 F.3d 665, 669 (4th Cir. 1996). The district court's determination of whether Norfleet fulfilled the requirements of § 3553(f) is a question of fact reviewed for clear error. See United States v. Romo, 81 F.3d 84, 86 (8th Cir. 1996); United States v. Rodriguez, 69 F.3d 136, 144 (7th Cir. 1995).

Under the "safety valve" provision of 18 U.S.C.A. § 3553(f) and USSG § 5C1.2, for certain offenses a district court shall impose a sentence in accordance with the guidelines, without regard to the statutory minimum, if the court determines that the defendant meets five criteria. One criterion is that the defendant, by the time of sentencing, truthfully provide the Government with all information about the instant offense. See 18 U.S.C.A. § 3553(f)(5); USSG § 5C1.2(5).

We find that the district court did not clearly err in finding that Norfleet had not met his burden of proving by a preponderance of the evidence that he truthfully provided the Government with all the information and evidence he had regarding his crime. See United States v. Ivester, 75 F.3d 182, 185 (4th Cir. 1996). Although Norfleet made a confession at the time of his arrest, he subsequently ceased cooperation with the Government. After conviction he offered information to the Government of which he previously denied knowledge. Under these circumstances we find no clear error in the district court's refusal to apply the "safety valve" provision.

Accordingly, we affirm Norfleet's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED