**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 04-4684**

—————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

BERNARD JERIDORE, a/k/a Benny B, a/k/a Bernie,

Defendant - Appellant.

—————————

Appeal from the United States District Court for the District of
South Carolina, at Charleston.  Patrick Michael Duffy, District
Judge.  (CR-03-162)

—————————

Submitted:  June 22, 2006          Decided:  July 10, 2006

—————————

Before MICHAEL, MOTZ, and GREGORY, Circuit Judges.

—————————

Affirmed by unpublished per curiam opinion.

—————————

Michael S. Seekings, Charleston, South Carolina, for Appellant.
Jonathan S. Gasser, United States Attorney, Jimmie Ewing, OFFICE OF
THE UNITED STATES ATTORNEY, Columbia, South Carolina; Robert H.
Bickerton, Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Charleston, South Carolina, for Appellee.

—————————

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Bernard Jeridore appeals his 120-month sentence for convictions on various drug charges. Jeridore asserts that the district court erred by determining that he was ineligible for application of the safety valve, 18 U.S.C. § 3553(f), which would have required the court to impose a sentence without regard to the applicable statutory minimum sentence. Because the district court's finding that Jeridore did not meet the § 3553(f) truthfulness requirement is not clearly erroneous, we affirm.

I.

In late 2002 Jeridore was involved with a major cocaine distribution network in Charleston, South Carolina, that was then under investigation by federal agents. Jeridore and fourteen other defendants connected with the network were charged in a 61-count indictment filed on April 10, 2003. Jeridore was charged with (1) conspiracy to possess with the intent to distribute cocaine and marijuana, 21 U.S.C. §§ 841(a)(1), 846, and (2) possession with the intent to distribute cocaine, 21 U.S.C. § 841(a)(1). Jeridore pled guilty to both counts on October 29, 2003. The plea agreement provided that in exchange for Jeridore's plea and cooperation (including his willingness to submit to polygraph examination upon the government's request), the government would move for a downward

departure for substantial assistance and an offense level reduction for acceptance of responsibility.

Jeridore was interviewed by government agents on several occasions. At the first interview Jeridore admitted to involvement in only one cocaine transaction. At the second interview agents confronted Jeridore with evidence suggesting that he had been involved to a greater degree. Jeridore then admitted that he had not been totally truthful at the first interview and admitted involvement in two other transactions. In all three transactions Jeridore obtained one to two kilos of cocaine from an acquaintance, "J. Black," and then sold the cocaine to another acquaintance, Christopher Bryant. Although Jeridore had known Black since approximately 1992 and had conducted at least three major drug transactions with him, Jeridore claimed that he did not know Black's full name, Black's address, or what vehicle Black drove, nor did he know any means by which Black could be reached. The government characterized Jeridore's asserted lack of knowledge about Black as "nothing short of almost ludicrous." J.A. 347.

Agents also interviewed another drug dealer, James Anderson, who reported that Jeridore had been involved in drug activity in Myrtle Beach, South Carolina. When agents asked Jeridore during a third interview whether he had been involved in the Myrtle Beach drug deals, Jeridore denied any involvement. After being confronted with a surveillance report showing his

3

involvement, however, Jeridore conceded that he had once met with Anderson and that he knew Don Gause, a Myrtle Beach police officer who had been implicated in drug deals.  Based on these conflicting statements, agents arranged for Jeridore to take a polygraph examination.  The polygraph examiner opined that Jeridore had been deceptive when he told the examiner that was he was not involved in any drug transactions with Officer Gause.  At Jeridore's sentencing hearing Gause corroborated Jeridore's assertion that they had neither conversed about drugs nor engaged in drug transactions.

The district court granted Jeridore a two-level reduction for acceptance of responsibility but found that the § 3553(f) safety valve did not apply because Jeridore was not "truthful and forthcoming to the Government in all respects."  J.A. 350.  Jeridore's resulting guideline range was 97 to 121 months, but due to the statutory 10-year mandatory minimum, his actual sentencing range was 120 to 121 months.  The district court sentenced Jeridore to a term of 120 months in prison.

## II.

The safety valve requires a district court to impose a sentence within the applicable guideline range without regard to any statutory minimum sentence if a defendant meets five requirements.  18 U.S.C. § 3553(f).  The requirements are:  (1) the defendant has no more than one criminal history point, (2) the

4

defendant did not use violence or credible threats of violence or possess a firearm in connection with the offense, (3) the offense did not result in death or serious bodily injury, (4) the defendant was not an organizer or leader of others in the offense, and (5) the defendant provided truthful information to the government concerning the crime. Id. To satisfy the fifth requirement, the defendant must "truthfully provide[] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." Id. § 3553(f)(5). This provision requires more than accepting responsibility for one's own acts; it requires a defendant to disclose all he knows concerning both his involvement and that of any co-conspirators. United States v. Ivester, 75 F.3d 182, 184 (4th Cir. 1996). The burden is on the defendant to prove that all five safety valve requirements have been met. United States v. Beltran-Ortiz, 91 F.3d 665, 669 (4th Cir. 1996).

Jeridore argues that the district court erred when it determined that he was not "truthful and forthcoming to the Government in all respects." J.A. 350. The factual findings of the district court with respect to whether a defendant has satisfied the criteria of § 3553(f) may not be reversed absent clear error. United States v. Wilson, 114 F.3d 429, 432 (4th Cir. 1997). In making its findings, the district court here observed

5

that Jeridore had not been forthright with the government:  when Jeridore failed to voluntarily tell the full story about the crime, the government confronted him with certain information, and he then grudgingly gave a fuller account.  This approach did not satisfy Jeridore's burden to disclose all he know about the crime, and the district court did not clearly err in finding that he was not truthful and forthcoming in all respects.

The parties dispute whether it was appropriate for the district court to consider evidence (such as the polygraph results) about Jeridore's involvement with the Myrtle Beach drug sales. Jeridore argues that the alleged Myrtle Beach drug sales were not part of a "common scheme or plan" with the charged conduct, making information about those transactions irrelevant for § 3553(f)(5) purposes.  Even if we were to agree with Jeridore on this point, however, we would affirm the district court's determination that Jeridore is not eligible for the safety valve because of Jeridore's lack of truthfulness as to his drug transactions with Black and Bryant.  Jeridore further argues that the district court's § 3553(f) untruthfulness finding is inconsistent with its finding that Jeridore was entitled to an offense-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1.  Although there is some logical force to this argument, we cannot say that the district court's findings were so "inconsistent [] that both could not stand."  See United States v. Sabir, 117 F.3d 750, 754 (3d Cir.

6

1997).  We therefore affirm the district court's determination that Jeridore was ineligible for the safety valve.

III.

Jeridore next argues that under United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), facts alleged to deny a defendant an otherwise available sentence reduction must be admitted by the defendant or proven beyond a reasonable doubt to a jury.  Because Jeridore did not raise this issue in the district court, we review for plain error.  United States v. Rodriguez, 433 F.3d 411, 414-15 (4th Cir. 2006).  To establish that the district court committed plain error, Jeridore must show that (1) an error was made, (2) the error was plain, (3) the error affected Jeridore's substantial rights, and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.  United States v. Olano, 507 U.S. 725, 732-37 (1993).  In Booker the Supreme Court held that any fact (other than a prior conviction) necessary to support a sentence exceeding the maximum authorized by the facts established in a guilty plea must be admitted by the defendant or proved to a jury beyond a reasonable doubt.  543 U.S. at ---, 125 S. Ct. at 756.  In this case the maximum sentence authorized by the facts established in Jeridore's plea was 121 months.  Jeridore's eligibility for the safety valve had no bearing on whether his sentence would exceed 121 months;

7

rather, it affected only whether the court could sentence him to a term shorter than 120 months. Jeridore therefore cannot establish plain <u>Booker</u> error resulting from the district court's determination that he was ineligible for the safety valve.

***

For the foregoing reasons, we affirm Jeridore's 120-month sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court, and argument would not aid the decisional process.

<u>AFFIRMED</u>