PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 10-5201

KIMBERLEY HENRY,

*Defendant-Appellant.*

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 10-5219

EDGAR HENRY,

*Defendant-Appellant.*

Appeals from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, District Judge.
(1:08-cr-00083-IMK-JSK-2; 1:08-cr-00083-IMK-JSK-1)

Argued: December 6, 2011

Decided: March 8, 2012

Before WILKINSON, KEENAN, and WYNN,
Circuit Judges.

Affirmed by published opinion. Judge Keenan wrote the opinion, in which Judge Wilkinson and Judge Wynn joined.

**COUNSEL**

**ARGUED:** Brian Joseph Kornbrath, OFFICE OF THE FED-ERAL PUBLIC DEFENDER, Clarksburg, West Virginia, for Appellants. Shawn Angus Morgan, OFFICE OF THE UNITED STATES ATTORNEY, Clarksburg, West Virginia, for Appellee. **ON BRIEF:** Charles T. Berry, Fairmont, West Virginia, for Appellant Edgar Henry. William J. Ihlenfeld, II, United States Attorney, Clarksburg, West Virginia, for Appellee.

---

**OPINION**

BARBARA MILANO KEENAN, Circuit Judge:

Kimberley Henry and her husband Edgar Henry (collectively, the Henrys) were convicted in a jury trial of two offenses related to their conduct of growing marijuana at their home in a rural area of West Virginia. The Henrys raise three issues in this appeal: 1) whether a thermal-imaging search warrant that led to the seizure of marijuana on their property was valid; 2) whether the district court erred in excluding testimony that Edgar Henry used marijuana for medical purposes; and 3) whether the district court erred in determining that the Henrys were ineligible to receive "safety valve" sentencing consideration under 18 U.S.C. § 3553(f). Upon our review of these issues, we affirm the Henrys' convictions and sentences.

I.

In September 2003, Sergeant Steve Jones of the West Virginia State Police received information that the Henrys were growing large amounts of marijuana at their residence in Rosedale, West Virginia. Jones relayed this information to Sergeant James M. Manning, a West Virginia State Police

officer who also was serving as a deputy task force agent with the United States Drug Enforcement Administration. After receiving this information, Manning began investigating the Henrys.

On July 13, 2004, Manning filed an application for a search warrant to conduct a thermal-imaging scan of the Henrys' property. In his affidavit filed with the warrant application, Manning stated that he received information from a deputy sheriff that a confidential informant had revealed that the Henrys had been growing and distributing marijuana in the Rosedale area for the past four years.

The affidavit also contained the information that Manning received from Sergeant Jones, including an account from an anonymous source who stated in 2003 that the Henrys maintained a large indoor marijuana "grow operation" at their residence near Rosedale. This source also stated that the Henrys once had lived in New Jersey. Manning confirmed with the West Virginia Department of Motor Vehicles that the Henrys' physical address was in Rosedale, West Virginia, which is located in Gilmer County. Manning additionally confirmed that Kimberley Henry's social security number was issued in New Jersey.

Also in the affidavit, Manning stated that in November 2002, two West Virginia State Police officers interviewed an inmate named Phillip Lee Sandy in a jail in Braxton County, West Virginia, regarding his knowledge of drug-related activity. Sandy told the officers that he had purchased small quantities of high-quality marijuana from Kimberley Henry on four or five occasions. Sandy also stated that the Henrys had constructed a building behind their residence to grow marijuana hydroponically, and Sandy provided the officers with a hand-drawn map of the Henrys' property.

According to Sandy, the Henrys moved to West Virginia from the Washington, D.C. area. Manning corroborated this

information when he conducted a criminal history review and learned that Edgar Henry had an arrest record in certain areas of Maryland located near Washington, D.C. Manning's investigation further revealed that Edgar Henry's first arrest in that area, in 1972, was based on drug-related charges, and that his second arrest in Maryland, in 1993, was for possession of marijuana.

Manning corroborated Sandy's description of the Henrys' property by conducting an aerial surveillance of the property in February 2004. During that surveillance, Manning observed a tan-colored residence with an attached, enclosed walkway leading to a building behind the residence.

As stated in the affidavit, several weeks after conducting the aerial surveillance, Manning and two other officers walked "along the roadway in the area of the [Henrys'] residence" to view the property. Manning observed in the rear building two large hooded lights and two ceiling fans, and heard the sound of a "large ventilation fan" emanating from the roof of the building.

The affidavit also stated that in May 2004, Manning learned that Edgar Henry had been arrested and charged with assault and disorderly conduct after threatening individuals at a grocery store in Rosedale who were trying to organize a "neighborhood watch program." Following Henry's arrest, police discovered marijuana on his person, and Henry later was charged with possession of marijuana.

Manning also included in the affidavit the fact that Kimberley Henry did not have an arrest record. However, Manning further stated that Kimberley Henry appeared to have a particular interest in a 2002 federal prosecution of another individual from Rosedale who was charged with growing marijuana. A West Virginia State police officer had informed Manning that Kimberley Henry was present for every court appearance made by that defendant.

Finally, Manning stated in the affidavit that he received power usage records for the Henrys' residence, which revealed an average bi-monthly electric usage of 10,870 kilowatt hours, with an average cost of about $728 for each bi-monthly billing period. Additionally, Manning confirmed that the Henry residence was not heated by electric power, but by gas.

After reviewing this affidavit along with Manning's application, a magistrate judge concluded that there was probable cause to support a thermal-imaging scan of the Henrys' property, and issued the requested search warrant. Manning executed the thermal-imaging search warrant in July 2004.

During the search, although the outside temperature in the area was about 58 degrees Fahrenheit, an air conditioning unit was operating in the rear building. However, the air conditioning unit in the residential portion of the property was not operating. Using night-vision goggles and a thermal-imaging unit, Manning and another officer determined that the rear building emitted a high amount of heat, which was much greater than the residential portion of the structure.

Relying on the information obtained during this search, along with the information provided in his initial affidavit, Manning applied for a second search warrant to conduct a physical search of the Henrys' property. The magistrate judge issued the requested warrant.

During the physical search of the Henrys' property, the police seized numerous items, including a total of 85 marijuana plants in various stages of development. The police also seized evidence of a recent harvest, including 31 marijuana plant roots.

Additionally, the police discovered various types of "growing equipment," processed marijuana, triple-beam scales, gallon-sized plastic bags, drug usage paraphernalia, and a

binder containing handwritten notes, most of which were entered by Kimberley Henry and involved the growing of marijuana from 2000 through 2002. Finally, the police seized $1,800 in cash, in the form of $100 bills.

The Henrys were indicted in the United States District Court for the Northern District of West Virginia on three counts: 1) conspiracy to manufacture, distribute, and possess with intent to distribute 100 or more marijuana plants, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B); 2) aiding and abetting in the manufacture of 100 or more marijuana plants, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and 18 U.S.C. § 2; and 3) aiding and abetting in the possession with the intent to distribute less than 50 kilograms of marijuana.

The Henrys filed a motion to suppress the evidence obtained from the searches of their property, arguing that the warrant application for each search was insufficient, and that the initial affidavit for the thermal-imaging search warrant was so deficient that it constituted a "bare bones" affidavit. The magistrate judge conducted hearings on the Henrys' motion and issued an opinion recommending that the district court deny the motion. The district court agreed with this recommendation and denied the Henrys' motion to suppress.

Also before trial, the district court considered the government's motion in limine. In that motion, the government sought to preclude the Henrys from offering testimony that Edgar Henry personally used the marijuana grown by the Henrys to alleviate symptoms relating to his medical illnesses. The purported purpose of this testimony was to show that the Henrys lacked any intent to distribute the marijuana being grown on their property.

After conducting a hearing, the district court granted the government's motion in limine. The district court concluded that the Supreme Court's holding in *United States v. Oakland Cannabis Buyers' Cooperative*, 532 U.S. 483 (2001) (*Oak-*

*land Cannabis*), prohibited the Henrys from presenting a "medical necessity defense." However, the district court permitted the Henrys to offer evidence that they possessed and manufactured the marijuana solely for their personal use.

The case proceeded to a jury trial. The jury convicted the Henrys of two charges, the charge of conspiracy to manufacture, distribute, and possess with intent to distribute 100 or more marijuana plants, and the charge of aiding and abetting in the manufacture of 100 or more marijuana plants.[1] The jury found the Henrys not guilty of the charge of aiding and abetting in the possession with the intent to distribute less than 50 kilograms of marijuana.

The Henrys' pre-sentence reports reflected that the Henrys both were subject to a five-year mandatory minimum sentence under 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). The Henrys objected to the pre-sentence reports and contended that they should not be subject to the statutory minimum sentence because they qualified for a sentencing benefit under the "safety valve" provision of 18 U.S.C. § 3553(f). In support of their argument, the Henrys relied on a written "offer of proof" submitted to the district court before sentencing, in which the Henrys described the details of their marijuana operation.[2]

After conducting a sentencing hearing during which the parties presented testimony and other evidence, the district court determined that the Henrys were not credible, and that they had not provided the government with all relevant information relating to the offenses. Thus, the district court concluded that the Henrys failed to establish that they qualified for safety valve relief. The district court imposed on each

---

[1]The jury also affirmatively answered a special interrogatory, finding that the Henrys' real property should be forfeited.

[2]The Henrys also informed the district court that Kimberley Henry had met with two police officers before sentencing and had answered questions regarding her conduct.

defendant the mandatory minimum sentence of 60 months'
imprisonment. The Henrys timely filed this appeal.

## II.

### A.

We first consider the Henrys' contention that the district
court erred in denying their motion to suppress. The Henrys'
argument on this issue is limited to challenging the suffi-
ciency of the affidavit submitted to obtain the thermal-
imaging search warrant. We review this issue of law de novo.
*See United States v. Wellman*, 663 F.3d 224, 228 (4th Cir.
2011).

A judicial officer's determination of probable cause gener-
ally is accorded "great deference" by reviewing courts. *Illi-
nois v. Gates*, 426 U.S. 213, 236 (1983); *Wellman*, 663 F.3d
at 228. In deciding whether there was probable cause to sup-
port the issuance of a search warrant, we consider whether the
known facts and circumstances were sufficient such that a
reasonable person could conclude that the described evidence
would be found in a particular place. *Wellman*, 663 F.3d at
228. The probable cause standard "is not defined by bright
lines and rigid boundaries" but "allows a [judicial officer] to
review the facts and circumstances as a whole and make a
common sense determination" whether there is a fair proba-
bility that evidence of a crime will be found. *Id.* (quoting
*United States v. Grossman*, 400 F.3d 212, 217 (4th Cir.
2005)).

The Henrys assert that the affidavit at issue failed to meet
this probable cause standard. The Henrys focus their argu-
ment on the information provided by the two unidentified
sources and by Sandy, the cooperating inmate. According to
the Henrys, these sources failed to explain how they obtained
the information they relayed to the authorities, and failed to
provide sufficient details to demonstrate that they were credi-

ble and reliable sources. The Henrys further contend that Sandy's information was "stale," because he was interviewed by the police more than twenty months before the thermal-imaging search warrant was issued. Additionally, the Henrys argue that although Manning submitted information to the magistrate judge regarding power usage at the Henrys' property, Manning failed to show that such usage was irregular.

We disagree with the Henrys' arguments, because they isolate certain aspects of the affidavit to the exclusion of other supporting facts and circumstances. Initially, we observe that the Henrys accurately identify certain weaknesses in the affidavit concerning the information obtained from Sandy and the two unidentified sources. The individual statements from each of these three sources were not based on recent information. Rather, the sources only were able to state that the Henrys had grown large amounts of marijuana at their residence in the past, and that the sources had purchased marijuana from the Henrys at some unidentified earlier time.

Because these accounts were not based on recently-acquired information, the accounts, if considered separately, may well have been insufficient to establish probable cause. However, when considered collectively, that information demonstrated that three individuals with no connection to one another provided consistent statements regarding the Henrys' alleged illegal conduct involving the manufacture and distribution of marijuana.

We also observe that many details provided by these three sources were corroborated by Manning's independent investigation. Manning confirmed that Kimberley Henry had lived in New Jersey, that the Henrys likely moved to West Virginia from the Washington D.C. area, and that the Henrys' property, when viewed by Manning during an aerial surveillance, appeared as described by Sandy. In addition, the magistrate judge's determination was supported by other details, including Edgar Henry's threats to residents seeking to organize a

neighborhood watch program, and Kimberley Henry's acute interest in court proceedings involving a person accused of manufacturing marijuana in the Rosedale area.

Regarding the electric power usage information submitted to the magistrate judge, the Henrys correctly observe that Manning failed to provide information to assist the magistrate judge in determining whether the Henrys' power usage was excessive for a property of that size. However, Manning did determine that the residence was heated by gas, rather than by electric power. Therefore, the magistrate judge was able to consider the Henrys' electric power usage information in that relevant context.

In view of the collective strength of this information, we conclude that the affidavit provided a sufficient basis to establish probable cause for issuance of the thermal-imaging search warrant. Therefore, we hold that the district court did not err in denying the Henrys' motion to suppress.

## B.

We next consider the Henrys' argument that the district court erred in granting the government's pre-trial motion in limine, thereby preventing the Henrys from presenting evidence that Edgar Henry used marijuana to improve symptoms related to his medical illnesses.[3] The Henrys contend that the district court erroneously applied the *Oakland Cannabis* case

---

[3]The Henrys also assert that their due process rights were violated because the district court's ruling on the motion in limine resulted in their inability to present a defense. The record, however, indicates that the Henrys were given ample opportunity to defend themselves and were permitted to present evidence that they personally used marijuana. As we explained in *United States v. Malloy*, 568 F.3d 166, 176-77 (4th Cir. 2009), evidence regarding a particular aspect of a defense can be excluded without infringing on the general right of a defendant to present a defense. Therefore, we agree with the district court's conclusion that the ruling on the motion in limine did not impact the Henrys' right to present a defense.

in granting the motion in limine. We disagree with the Henrys' argument.

We review a district court's refusal to admit evidence under an abuse of discretion standard. *United States v. Malloy*, 568 F.3d 166, 177 (4th Cir. 2009). A district court abuses its discretion when it acts in an arbitrary manner, when it fails to consider judicially-recognized factors limiting its discretion, or when it relies on erroneous factual or legal premises. *Id.* (citing *United States v. Uzenski*, 434 F.3d 690, 709 (4th Cir. 2006)).

We conclude that the district court did not abuse its discretion in limiting the scope of the Henrys' defense based on the decision in *Oakland Cannabis*. In that case, the government filed an action seeking an injunction against a California cooperative to enjoin the cooperative from manufacturing and distributing marijuana to patients who qualified under California law to receive marijuana for medical purposes. 532 U.S. at 486-87. After the district court granted the government's request for a preliminary injunction, the cooperative asked the court to modify the injunction to permit distributions that were "medically necessary." *Id.* at 488. The district court denied the cooperative's request and, on appeal, the Ninth Circuit reversed the district court's ruling. *Id.*

The Supreme Court disagreed with the Ninth Circuit's decision. The Supreme Court held that the district court was not permitted to consider the cooperative's medical necessity defense in fashioning injunctive relief, because medical necessity is not a defense to the conduct prohibited by the Controlled Substances Act (the Act), 21 U.S.C. § 801 *et seq. Id.* at 494.

In reaching this conclusion, the Court observed that the Act contained only one exception to the general prohibition of manufacturing marijuana or possessing marijuana with the intent to distribute, namely, the exception afforded to

government-approved research projects. *Id.* at 489-90 (citing 21 U.S.C. §§ 823(f), 841(a)(1)). The Court further explained that for a drug to qualify as a Schedule I controlled substance under the Act, that drug cannot have any "currently accepted medical use" in treatment in the United States. *Id.* at 491 (citing 21 U.S.C. § 811). Thus, the Court reasoned that Congress, by including marijuana as a Schedule I controlled substance, made a determination "that marijuana has no medical benefits worthy of an exception" beyond the single exception for government-approved research stated in the Act. *Id.*

As the Henrys accurately observe, the facts and circumstances in *Oakland Cannabis* differ significantly from those before us in the present case. Here, the Henrys were not seeking to defend their acts of distribution of marijuana on the basis that marijuana provided some medical benefit. Rather, the Henrys sought to bolster their defense of personal use of marijuana by explaining their belief that marijuana had a beneficial impact on Edgar Henry's health.

Despite this distinction, however, a critical component of the Supreme Court's rationale in *Oakland Cannabis* is relevant here. As the Supreme Court explained, because Congress has determined that there is no medical benefit from the use of marijuana, such use cannot serve as a defense to conduct prohibited by the Controlled Substances Act. Given Congress' determination, we cannot say that the district court acted arbitrarily or relied on an erroneous legal principle in determining that the Henrys' reason for personally using marijuana should be excluded from evidence. Therefore, we conclude that the district court did not err in granting the government's motion in limine.

## C.

Finally, the Henrys argue that the district court committed sentencing error in determining that they both were ineligible for safety valve relief under the provisions of 18 U.S.C.

§ 3553(f). Because a district court's decision regarding the eligibility for such relief presents a question of fact, we review the district court's decision for clear error. *United States v. Aidoo*, ___ F.3d ____, ____, slip op. at 11 (4th Cir. 2012) (citing *United States v. Wilson*, 115 F.3d 429, 432 (4th Cir. 1997)). This standard of review permits reversal only if this Court is "left with the definite and firm conviction that a mistake has been committed." *United States v. Stevenson*, 396 F.3d 538, 542 (4th Cir. 2005) (quoting *Anderson v. Bessemer City*, 470 U.S. 562, 573 (1985)). In conducting our review, we accord the district court's credibility determinations great deference. *United States v. Layton*, 564 F.3d 330, 334 (4th Cir. 2009).

When applicable, the safety valve provision permits a district court to impose a shorter sentence for first-time offenders who otherwise would be subject to a mandatory minimum sentence. 18 U.S.C. § 3553(f); *United States v. Withers*, 100 F.3d 1142, 1146 (4th Cir. 1996). A defendant seeking this statutory relief must establish that (1) the defendant does not have more than one criminal history point; (2) the defendant did not use violence or possess a firearm in connection with the offense; (3) the offense did not result in death or serious bodily injury; (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense; and (5) no later than the time of sentencing, the defendant truthfully provided the government with all evidence and information the defendant had concerning the offense or offenses comprising the same course of conduct or a common scheme or plan. 18 U.S.C. § 3553(f); *see also* U.S.S.G. § 5C1.2; *United States v. Beltran-Ortiz*, 91 F.3d 665, 669 (4th Cir. 1996).

In the present case, the district court concluded, and the government agrees, that the Henrys satisfied the first four requirements necessary to qualify for safety valve relief. Therefore, the only issue before us is the district court's finding regarding the fifth requirement for safety valve relief, namely, that the Henrys failed to provide truthful information

to the government concerning the offense or offenses that were part of the same course of conduct or common scheme or plan. *See* 18 U.S.C. § 3553(f)(5).

The Henrys argue that they provided the district court with all relevant information regarding their marijuana operation. They also contend that they provided financial documentation supporting their contention of legitimate income, including evidence that they regularly received income from their rental of farm equipment. The Henrys maintain that based on these submissions, they satisfied the fifth requirement of 18 U.S.C. § 3553(f) and were entitled to application of the safety valve provision. We disagree.

As we have explained, section 3553(f)(5) "requires broad disclosure from the defendant" and mandates that a defendant supply the details of his own culpability. *Aidoo*, slip op. at 13-14. The district court is obligated to determine whether a defendant has truthfully provided the government with all known relevant information, and the court may consider any false statements a defendant may have made when evaluating the defendant's credibility. *Aidoo*, slip op. at 14-15. (citing *United States v. Nuzzo*, 385 F.3d 109, 119 n.25 (2d Cir. 2004); *United States v. Brownlee*, 204 F.3d 1302, 1305 (11th Cir. 2000)).

In the case before us, the district court found that the Henrys were not credible witnesses, and that certain representations they made were inconsistent with a full and truthful disclosure of all relevant information. The district court first cited Kimberley Henry's trial testimony, in which she stated that the $1,800 in cash seized by the authorities came from a rental payment received for leasing their farm equipment. The district court contrasted this testimony with other evidence presented by the government, which showed that the equipment rental was paid for by check, not in cash. The district court also stated that although the Henrys presented some evidence that a portion of the $72,000 flowing into and out of

their bank accounts during the time period covered by the conspiracy may have come from legitimate sources, the court found that the general absence of financial records was consistent with cash income based on illegal drug sales.

In addition, the district court noted that several items seized during the search of the Henrys' property, including the triple-beam scales and the large plastic baggies found in close proximity to 299 grams of marijuana, indicated that the Henrys were distributing marijuana and not merely using it as they had maintained. Based on these considerations, the district court determined that the Henrys did not truthfully disclose all relevant information as required by section 3553(f)(5). We hold that the district court did not clearly err in reaching this determination, which was supported on the several bases described above.

Our conclusion is not altered by the fact that the district court rested its decision in part on its finding that the Henrys were not truthful when they denied that they had distributed marijuana. Although the jury found the Henrys not guilty of the charge of aiding and abetting in the possession with the intent to distribute marijuana, the issue remained at sentencing whether the Henrys truthfully disclosed all information regarding the $1,800 in cash seized by the police and the other undocumented income. Thus, the district court was entitled to evaluate the Henrys' credibility on this issue, including whether their testimony revealed the true source of that income or instead was an attempt to obscure other illegal conduct related to the distribution of marijuana.

Based on the district court's credibility finding, which we accord substantial deference, *Layton*, 564 F.3d at 334, and the several sound bases on which the district court relied, we hold that the district court did not clearly err in determining that the Henrys failed to carry their burden of proving that they satisfied the requirements of 18 U.S.C. § 3553(f)(5). Accord-

ingly, we affirm the district court's decision denying application of the safety valve provision.

## III.

For these reasons, we affirm the district court's judgment.

*AFFIRMED*