PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

     *Plaintiff-Appellee,*

v.

FRANK AIDOO,

     *Defendant-Appellant.*

No. 10-4752

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson Everett Legg, District Judge.
(1:09-cr-00168-BEL-1)

Argued: October 27, 2011

Decided: February 29, 2012

Before TRAXLER, Chief Judge, and GREGORY and
KEENAN, Circuit Judges.

Affirmed by published opinion. Chief Judge Traxler wrote the
majority opinion, in which Judge Keenan joined. Judge Greg-
ory wrote a dissenting opinion.

## COUNSEL

**ARGUED:** Brendan Abell Hurson, OFFICE OF THE FED-
ERAL PUBLIC DEFENDER, Baltimore, Maryland, for
Appellant. Mushtaq Zakir Gunja, OFFICE OF THE UNITED

STATES ATTORNEY, Baltimore, Maryland, for Appellee.
**ON BRIEF:** James Wyda, Federal Public Defender, Baltimore, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, Robert R. Harding, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

---

**OPINION**

TRAXLER, Chief Judge:

Frank Aidoo pleaded guilty to unlawful importation of heroin in violation of 21 U.S.C. § 952(a). At sentencing, the district court concluded that Aidoo had not been truthful and therefore was not eligible for sentencing under the "safety valve" exception to the otherwise-applicable statutory minimum sentence. *See* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2(a). The court sentenced Aidoo to 60 months' imprisonment, the minimum sentence permitted under the statute. Aidoo appeals, and we affirm.

I.

Customs officials had intelligence suggesting that Aidoo, a native and resident of Ghana and a citizen of the Netherlands, was involved in drug smuggling. After learning that Aidoo had paid cash for a ticket just a few days before he boarded a flight from Ghana, the officers stopped Aidoo when he landed at Baltimore-Washington International Airport on March 27, 2009. Aidoo initially told the officers that he was in the United States to visit his nephew "Evans Twum," the name listed on Aidoo's customs declaration form. When the officers called Twum at the number provided by Aidoo, the person answering the phone seemed very nervous and hung up. The officers called back, and the person answering the phone identified himself as Michael Jackson and again hung

up. Aidoo finally admitted that he had ingested heroin, and he eventually passed pellets containing 998.4 grams of heroin. He was indicted on one count of importing heroin and one count of possession with intent to distribute heroin. Hoping to qualify for sentencing under the safety valve, Aidoo met with the government in a proffer session. Aidoo told the government that this incident was the first time he had ever smuggled heroin and that he had been paid $10,000 by a man Aidoo could identify only as "Kofi." Aidoo did not say who his contact in the United States was to be, and he identified no one in the United States as being involved in the scheme. J.A. 32-33, 130-31. Although Aidoo had provided a phone number for Evans Twum when he was arrested, he refused to implicate Twum in the smuggling. The government showed Aidoo his passport, with dozens of stamps showing numerous trips out of Ghana, and told Aidoo that the passport appeared to be that of an international drug smuggler. Aidoo explained that he traveled to Europe and the United States to buy clothes at outdoor bazaars and department stores. Aidoo said he brought the clothes back in his suitcase and then resold the clothes in Ghana. J.A. 31-32, 55. The government informed Aidoo at the proffer session that it did not believe he was being truthful and that he did not meet the requirements of the safety valve.

Aidoo eventually pleaded guilty to a single count of importing heroin. The plea agreement included a stipulation to facts that the government "would prove beyond a reasonable doubt," J.A. 23, including a statement that "[i]ntelligence obtained [by Customs officials] showed that Aidoo had been involved in heroin smuggling activities. Aidoo had traveled to an address in New York utilized by Nigerian heroin smugglers who were apprehended at John F. Kennedy Airport and in Boston." J.A. 24. The plea agreement noted the government's opposition to application of the safety valve but preserved Aidoo's right to argue to the district court that he qualified for sentencing under the safety valve and to appeal should the court reject his safety-valve argument.

The presentence report ("PSR") prepared in advance of sentencing stated that Aidoo "appears to meet the criteria set for imposition of a sentence . . . without regard to any statutory minimum sentence." J.A. 104. Applying a three-level acceptance-of-responsibility reduction and the two-level reduction provided for defendants who meet the safety-valve requirements, *see* U.S.S.G. § 2D1.1(b)(11), the PSR calculated that Aidoo's advisory sentencing range was 57-71 months.

After receiving the PSR, counsel for Aidoo submitted to the court a letter outlining his view of sentencing. Counsel contended that Aidoo had satisfied all of the safety-valve requirements and noted that the government had not objected to the finding in the PSR that Aidoo was eligible for the safety-valve. In the letter, counsel asserted that several of Aidoo's international trips had been for the purpose of obtaining medical treatment that was unavailable to Aidoo in Ghana. The day after Aidoo's letter was filed, the government filed a sentencing memorandum objecting to application of the safety valve because Aidoo had not been truthful and specifying its reasons for believing Aidoo to be ineligible.

At the sentencing hearing, the government explained its opposition to application of the safety valve, reiterating the points made in its sentencing memorandum. The government stated that Aidoo's claim that the March 27 incident was the first time he had smuggled heroin was inconsistent with the information stipulated to in the plea agreement; that the large quantity of heroin Aidoo had ingested (just under a kilogram) suggested that he was an experienced smuggler; that Aidoo had never identified his contact in the United States; and that his international-clothes-buying-and-reselling story was not believable. The government noted that while counsel for Aidoo had stated in his sentencing letter that some of Aidoo's international trips had been to obtain medical treatment, Aidoo himself had not mentioned any such trips during the proffer session.

Counsel for Aidoo asserted that Aidoo had been completely truthful about the conduct that led to his arrest and was entitled to sentencing under the safety valve. Although counsel presented no evidence to support Aidoo's story, counsel did represent to the court that counsel had read certain Congressional testimony and various newspaper articles indicating that drug mules ingest, on average, just under a kilogram of drugs. Counsel also noted that Aidoo had medical records in his possession when he was arrested that showed he had received medical treatment in Belgium at least four times. Counsel argued that the stipulation in the plea agreement about Aidoo's prior activities was not an admission that Aidoo had smuggled previously, but merely reflected his agreement that Aidoo had previously listed an address that at some point was associated with drug smugglers.[1] When asked by the district court how Aidoo had paid for all of his international travel, counsel stated he had spoken to the pastor of Aidoo's church in Ghana and that the church had provided some financial assistance. Counsel argued that the government was free to disbelieve Aidoo's story about his clothes-buying trips, but that the prior trips were not part of a common scheme or plan with the offense of conviction and that Aidoo was not required to explain those trips to qualify for the safety valve.

The district court concluded that Aidoo was not entitled to sentencing under the safety valve because of the "inherent implausibility" of Aidoo's explanation of his international travel. J.A. 53. The court explained:

---

[1]We note that counsel's statement seems to suggest that on previous trips to the United States, Aidoo listed on his customs declaration form an address in New York that was used by Nigerian drug smugglers, while the stipulation in the plea agreement indicates that Aidoo actually visited the address associated with the drug smugglers. The precise details of Aidoo's connection to the New York address, however, are not relevant to our decision.

> [T]hat was not a statement of some kind of whole-
> sale business that he was arranging shipments back
> on a freighter or a bulk shipment, or that he was buy-
> ing from factories. It's just simply implausible that
> a person can go to a department store in Brussels or
> some other city, buy some garments, put them in the
> suitcase, go back to Ghana, and sell them for a price
> that covers the expenses of the trips.
>
> All the thousands of dollars for international travel
> and staying in hotels is simply implausible, and, for
> that reason, I conclude that Mr. Aidoo is not eligible
> for the safety valve.

J.A. 53. Counsel for Aidoo then explained to the court that
Aidoo in his proffer had talked primarily about buying clothes
at outdoor bazaars and fairs and had mentioned only one
department store. The district court accepted that proffer but
explained that it did not change its conclusion: "[T]he signal
event [is] that the clothes go into a suitcase and go back to
Ghana, so we don't have anything that could be characterized
as a wholesale operation. So even accepting that proffer, my
view is the same." J.A. 55. The district court thus concluded
that Aidoo was subject to the five-year mandatory minimum
sentence, and the court sentenced him to 60 months' impris-
onment.

## II.

### A.

The safety-valve statute requires sentencing courts to disre-
gard any statutory mandatory minimum sentence if the defen-
dant establishes that: (1) he does not have more than one
criminal history point; (2) he did not use or threaten violence
or possess a firearm or other dangerous weapon; (3) the
offense did not result in death or serious bodily injury; (4) he
was not an organizer, leader, manager, or supervisor of others;

and (5) he truthfully provided the government with all evidence and information about the offense and related offenses. *See* 18 U.S.C. § 3553(f).

Under the statute, the government must be given an opportunity to make a recommendation, but the statute requires the district court to independently determine whether the requirements have been met, including whether the defendant was truthful. *See id.*; *United States v. Ivester*, 75 F.3d 182, 185 (4th Cir. 1996). In this case, there is no dispute that Aidoo satisfied the first four requirements of § 3553(f). The only question is whether Aidoo satisfied the fifth requirement by "truthfully provid[ing] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5).

The defendant bears the burden of "prov[ing] that the prerequisites for application of the safety valve provision, including truthful disclosure, have been met." *United States v. Beltran-Ortiz*, 91 F.3d 665, 669 (4th Cir. 1996); *accord United States v. Alvarado-Rivera*, 412 F.3d 942, 947 (8th Cir. 2005) (en banc); *United States v. Marquez*, 280 F.3d 19, 23 (1st Cir. 2002); *United States v. Gambino*, 106 F.3d 1105, 1110 (2d Cir. 1997); *United States v. Ramirez*, 94 F.3d 1095, 1101 (7th Cir. 1996). And because the burden is on the defendant, the government has no obligation to present evidence of the defendant's failure to satisfy the requirements of the safety valve. *See United States v. Sanchez*, 475 F.3d 978, 980 (8th Cir. 2007) ("The United States has no burden to refute a defendant's assertion that his information is truthful if his proffer is inadequate."); *Marquez*, 280 F.3d at 24-25 ("Were we to . . . insist upon extrinsic evidence, district courts would be bound to accept even the most arrant nonsense from a defendant's mouth so long as the government could not directly contradict it by independent proof. A rule to that effect would turn the burden of persuasion inside out.").

B.

On appeal, Aidoo argues that the district court erred by concluding he was not entitled to sentencing under the safety valve. While Aidoo acknowledges that the burden of proving compliance with the statute belongs to him, he argues that he did prove his compliance and that the government therefore was obligated to come forward with evidence showing that he had not been truthful or that his disclosure was less than complete. Because the government did not present such evidence, Aidoo contends that the district court had no basis for refusing to apply the safety valve.

In support of his claim that the government was required to disprove his story, Aidoo relies primarily on *United States v. Miranda-Santiago*, 96 F.3d 517 (1st Cir. 1996). In *Miranda-Santiago*, the First Circuit held that the government could not defeat the application of the safety valve "simply by saying, 'We don't believe the defendant,' and doing nothing more." *Id.* at 529. The court made it clear, however, that any obligation on the part of the government arises only if the defendant has established the credibility of his story:

> The defendant plainly has the burden of proving, by a preponderance of the evidence, entitlement to relief under section 3553(f). However, *where a defendant in her submissions credibly demonstrates* that she has provided the government with all the information she reasonably was expected to possess, *in order to defeat her claim, the government must at least come forward with some sound reason to suggest otherwise*.

*Id.* at 529 n.25 (emphasis added; citation omitted). Since *Miranda-Santiago* was decided, the First Circuit has repeatedly emphasized the narrowness of that holding. For example, in *Marquez*, the First Circuit rejected the defendant's claim that *Miranda-Santiago* required the government to present

evidence showing that his disclosure was untruthful or incomplete. *See Marquez*, 280 F.3d at 24. The *Marquez* court reiterated the established rule that "a sentencing court may reject a safety valve proffer based on its reasoned assessment of the defendant's credibility in light of the facts — and that the court may do so without the benefit of independent rebuttal evidence." *Id.* As to the defendant's understanding of *Miranda-Santiago*, the court explained that

> *Miranda-Santiago* stands merely for the proposition that when the record, taken as a whole, will not support a finding that the defendant has failed to provide a truthful and complete proffer, the government's lack of confidence in the proffer is insufficient, in and of itself, to justify a denial of access to the safety valve.

*Id.*; *see also United States v. Padilla-Colon*, 578 F.3d 23, 31 (1st Cir. 2009) (reaffirming the *Marquez* court's understanding of *Miranda-Santiago*); *United States v. White*, 119 F.3d 70, 74 (1st Cir. 1997) ("*Miranda-Santiago* in no sense suggests that the sentencing court cannot arrive at an independent determination regarding a criminal defendant's truthfulness, based on the evidence before it. Rather, we there held merely that it was clear error to conclude that the defendant had been untruthful, based solely on a PSR which directly contradicted the district court's determination.").

Since any obligation on the part of the government under *Miranda-Santiago* arises only after the defendant has carried his burden of proof, Aidoo's various arguments that the government was required to present evidence disproving his story are thus dependent on his assertion that he carried his burden of proof and established at the sentencing hearing that he provided a truthful and complete disclosure of all relevant information. The record, however, does not support this assertion.

Counsel for Aidoo insisted at sentencing that Aidoo had truthfully told the government everything he knew about the incident leading to his arrest. A defendant's "bare assertion that he was truthful," however, is insufficient to "satisfy his burden to prove by a preponderance of the evidence that he provided a full and honest disclosure." *United States v. Montes*, 381 F.3d 631, 637 (7th Cir. 2004). The defendant's burden under the safety valve is a true burden of proof that rests, at all times, on the defendant. To carry his burden, the defendant must persuade the district court that he has made full, truthful disclosure of information required by the safety valve. *See Ramirez*, 94 F.3d at 1100 ("The court's conclusion in favor of the defendant necessarily depends upon the defendant's persuasive ability to demonstrate to the court that he is eligible for the reduced sentence."); *United States v. Montanez*, 82 F.3d 520, 523 (1st Cir. 1996) ("It is up to the defendant to persuade the district court that he has truthfully provided the required information and evidence to the government." (internal quotation marks omitted)). At least in cases like this one, where the government opposes application of the safety valve, a defendant cannot carry his burden of proof without presenting some kind of evidence. *See United States v. Cervantes*, 519 F.3d 1254, 1258 (10th Cir. 2008) ("Absent a favorable recommendation from the government, a defendant needs to put on evidence at the sentencing hearing to meet his burden of showing that he truthfully and fully disclosed everything he knew and to rebut government claims to the contrary."); *United States v. Martinez*, 301 F.3d 860, 866 (7th Cir. 2002) (explaining that a defendant "cannot meet this burden if the government challenged the truthfulness, accuracy, or completeness of his statements and he produced nothing to persuade the district court that his disclosures were truthful and complete").[2]

---

[2]Given the nature of sentencing proceedings, the evidence supporting a defendant's claim of truthful disclosure need not be as formal as might be required in a trial. *See United States v. Cervantes*, 519 F.3d 1254, 1258 (10th Cir. 2008) (noting that defendant's evidence "may include proffer documents, stipulated facts, or, in all likelihood, testimony from the defendant or a representative of the government subject to cross-examination").

Aidoo, however, did not testify at the sentencing hearing, and he presented no other evidence showing that he had provided the government with complete and truthful disclosure. To be sure, counsel for Aidoo talked about evidence — the medical records showing Aidoo received treatment in Europe, and the newspaper articles and Congressional testimony indicating that it is not unusual for drug smugglers to ingest up to a kilogram of narcotics. The documents, however, were not presented to the district court, and the government did not stipulate to any of the information proffered by counsel for Aidoo. Nonetheless, even if we treat counsel's statements about the documents as evidence, they do little to further Aidoo's claim. The medical records explain only a few of the "dozens and dozens" of international trips shown on Aidoo's passport, J.A. 32, and the ability of some smugglers to ingest a kilo of narcotics says nothing about the likelihood that a first-time "body packer," as Aidoo claimed to be, could ingest such a large quantity. This evidence, at best, may be consistent with Aidoo's story, but the evidence falls far short of proving that Aidoo provided full and truthful disclosure. Given the weakness of the evidentiary record—a record that Aidoo was obligated to establish—we cannot say that the district court clearly erred by concluding that Aidoo was not eligible for sentencing under the safety valve. *See United States v. Wilson*, 114 F.3d 429, 432 (4th Cir. 1997) (explaining that the district court's determination of whether a defendant has satisfied the safety valve criteria is a question of fact reviewed for clear error); *see also United States v. Adu*, 82 F.3d 119, 125 (6th Cir. 1996) ("Where the government challenges a defendant's claim of complete and timely disclosure and the defendant does not produce evidence that demonstrates such disclosure, a district court's denial of a motion under § 3553(f) and § 5C1.2(5) is not clearly erroneous.").

This case, therefore, is quite unlike *Miranda-Santiago*, where the only inference that could be drawn from the record was that the defendant had provided a truthful and complete proffer. Because Aidoo failed to create a record that affirma-

tively establishes that he provided complete and truthful disclosure to the government, we reject Aidoo's arguments that, under *Miranda-Santiago*, the government was required to present evidence showing that he had not been truthful or that his disclosure was less than complete.

Our conclusion that the government had no obligation to present evidence rebutting Aidoo's proffer leaves little room for Aidoo to challenge the district court's rejection of the safety valve. At the sentencing hearing, the government, in accordance with its statutory right to make a recommendation, *see* 18 U.S.C. § 3553(f), pointed out the shortcomings of Aidoo's proffer, such as his refusal to implicate Evans Twum or to otherwise identify his contact in the United States, and suggested that Aidoo's clothes-buying story was not believable. *See Ramirez*, 94 F.3d at 1102 ("The government may respond to the defendant's statements by challenging them for their lack of candor or completeness or by calling to the court's attention the omission of evidence that the defendant should know and has not turned over to the government."). The district court was entitled to consider those arguments when making its independent determination of whether the defendant had satisfied the statutory requirements. *See United States v. Gales*, 603 F.3d 49, 54 (D.C. Cir. 2010) (explaining that even though the government did not present evidence contradicting the defendant's story, the district court was entitled to consider the government's assertion that the defendant's story was not credible); *United States v. Ponce*, 358 F.3d 466, 468-69 (7th Cir. 2004) ("A district court has the discretion . . . to consider the government's statements regarding contradictions and omissions in a defendant's offer of information . . . ."). The district court was likewise entitled to draw on its common sense and real-world experience to conclude that buying clothes at retail in the United States and Europe—in suitcase-sized lots—for resale in Ghana was unlikely to be a money-making venture, particularly given the airfare and hotel costs associated with international travel. *See Gales*, 603 F.3d at 54 (district court is entitled to draw reasonable infer-

ences when determining the credibility of defendant's proffer); *Marquez*, 280 F.3d at 24 ("[A] sentencing court may reject a safety valve proffer based on its reasoned assessment of the defendant's credibility in light of the facts . . . ."); *Beltran-Ortiz*, 91 F.3d at 669 n.4 ("[D]istrict courts remain free to reject a defendant's claim of full disclosure for credibility reasons . . . ."); *Montanez*, 82 F.3d at 523 ("The government is perfectly free to point out the suspicious omissions at sentencing, and the district court is entitled to make a common sense judgment. . . ."); *cf. United States v. Perry*, 747 F.2d 1165, 1169 (7th Cir. 1984) ("Judges in the federal system, whether they are in the trial or appellate system, do not operate in a vacuum, shielded from knowledge of drug operations in the real world . . . .").

Aidoo, however, contends that the district court's disbelief of the clothes-buying story cannot justify the court's refusal to apply the safety valve. The safety valve requires disclosure of information "concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5). Aidoo argues that because the government failed to connect any prior drug-smuggling by Aidoo to the offense of conviction, he was not obligated under the safety valve to explain his prior travels. And because he was not required to disclose information about his prior travels, Aidoo contends that the court's disbelief of his clothes-buying story does not preclude application of the safety valve. *See, e.g.*, *United States v. Miller*, 179 F.3d 961, 967-68 (5th Cir. 1999) (concluding that the defendant was entitled to application of safety valve despite his lies about prior conduct, because the prior conduct was not relevant conduct about which disclosure is required). We disagree.

As an initial matter, we note that even if the prior smuggling alluded to in the plea agreement was not sufficiently connected to the offense of conviction, that does not mean that Aidoo's explanation of his international travel cannot be subject to scrutiny under the safety valve. Section 3553(f)(5)

requires broad disclosure from the defendant; it is a tell-all provision that requires the defendant to "truthfully supply details of his own culpability." *United States v. Real-Hernandez*, 90 F.3d 356, 361 (9th Cir. 1996); *accord Montes*, 381 F.3d at 636 (The "plainly broad language [of § 3553(f)(5)] suggests that any and all information that the defendant possesses concerning the offense must be provided to the Government." (internal quotation marks omitted)). As noted above, Aidoo offered the clothes-buying story to bolster his claim that the incident leading to his arrest was his first venture into smuggling. Whether the incident was Aidoo's first time smuggling is the kind of detail about the offense of conviction that must be disclosed under the safety valve. *See United States v. Gonzalez-Montoya*, 161 F.3d 643, 652 (10th Cir. 1998) ("Under § 3353(f)(5), a defendant must affirmatively volunteer all he knows [about the offense of conviction], including facts beyond the basic elements of the crime."). The story that Aidoo offered up to bolster his claim on this point should likewise be treated as part of the disclosure required by the safety valve.

Moreover, even if we were to accept Aidoo's view that his international travels were not connected to the offense of conviction and that his clothes-buying story was not part of the disclosure required by the safety valve, we would still find no error in the district court's consideration of the plausibility of Aidoo's clothes-buying story. As Aidoo notes, a defendant's lies about an unrelated matter or later-corrected lies about the offense do not automatically foreclose application of the safety valve. *See United States v. Brownlee*, 204 F.3d 1302, 1304 (11th Cir. 2000); *Miller*, 179 F.3d at 967-68. Nonetheless, while the lies may not be disqualifying, neither are they irrelevant. The district court is obligated to determine for itself whether the defendant has truthfully provided the government with all the relevant information that he knows, and the court is free to consider any lies the defendant may have told when evaluating the defendant's truthfulness. *See United States v. Nuzzo*, 385 F.3d 109, 119 n.25 (2d Cir. 2004)

("While a district court may find the fifth criterion of the safety valve satisfied despite prior lies and omissions, neither a district court nor this Court is precluded from considering those prior lies and omissions in determining whether the defendant has met his burden of proving that the information provided as of sentencing is complete and truthful."); *Brownlee*, 204 F.3d at 1305 ("[T]he evidence of [the defendant's prior] lies becomes part of the total mix of evidence for the district court to consider in evaluating the completeness and truthfulness of the defendant's proffer." (internal quotation marks omitted)). In this case, as noted above, it was proper for the district court to use its own common sense to find Aidoo's clothes-buying story implausible. Upon finding the story implausible, the district court committed no error by basing its rejection of the safety valve on the fact that Aidoo lied during his proffer session. *See United States v. Guerra-Cabrera*, 477 F.3d 1021, 1025 (8th Cir. 2007) ("The district court was . . . entitled to infer untruthfulness from the implausibility of appellants' accounts."); *United States v. Fletcher*, 74 F.3d 49, 56 (4th Cir. 1996) (affirming denial of safety valve in case where district court found that defendant lied by fabricating an alibi at trial: "[I]t is not illogical to assume that the judge similarly determined that [the defendant] failed to comply with the fifth condition" of § 3553(f)).

## III.

We turn now to Aidoo's remaining challenges to the district court's rejection of his safety-valve claim.

## A.

In the course of its ruling, the district court stated that "if Mr. Aidoo was an experienced heroin smuggler, then he was required to advise the government of that fact and explain his experience, how many times he has done this, who he did it for, his modus operandi." J.A. 52. Aidoo argues that this description of the disclosure obligation effectively requires

disclosure of every criminal act the defendant has ever committed. While a defendant seeking a substantial-assistance reduction in his sentence might be required to make that kind of wide-ranging disclosure, *see* U.S.S.G. § 5K1.1(a)(2), the safety valve's disclosure requirement is limited to information about the offense of conviction and any other crimes that constitute relevant conduct, *see* 18 U.S.C. § 3553(f). Aidoo thus contends that the district court measured his compliance against a standard of disclosure higher than that imposed by the safety valve. We disagree.

The district court made this statement in the course of considering the government's claim that Aidoo was an experienced smuggler, and the statement is an accurate description of the disclosure that would be required if Aidoo were an experienced member of a drug-smuggling conspiracy. *See, e.g.*, *United States v. Romo*, 81 F.3d 84, 85 (8th Cir. 1996) ("To satisfy § 3553(f)(5), Romo was required to disclose all the information he possessed about his involvement in the crime and his chain of distribution, including the identities and participation of others."); *Ivester*, 75 F.3d at 184 ("[S]atisfaction of § 3553(f)(5) requires a defendant to disclose all he knows concerning both his involvement and that of any co-conspirators."). Moreover, even if the court's statement could somehow be viewed as an indication that the court had an impermissibly broad view of the disclosure required when there is no conspiracy, any such error would be harmless, given our conclusion that the issue upon which the district court based its rejection of the safety valve—Aidoo's explanation for his international travels—was properly considered by the court, whether or not those travels were sufficiently connected to the offense of conviction.

B.

The PSR included a determination by the probation officer that Aidoo "appear[ed] to meet the criteria" for sentencing under the safety valve. J.A. 104. The Federal Rules of Crimi-

nal Procedure require objections to the PSR to be filed within fourteen days of receipt of the PSR, *see* Fed. R. Crim. P. 32(f)(1); neither the government nor Aidoo filed any formal objections to the PSR. Six days before sentencing, however, the government filed its sentencing memorandum objecting to application of the safety valve.

On appeal, Aidoo contends that the district court erred by entertaining the government's untimely objection to the PSR's safety-valve determination. Aidoo did not raise the timeliness of the government's objection below, and we therefore review the claim for plain error only. To obtain relief under plain-error review, Aidoo must first establish that "the district court erred, that the error was plain, and that it affected his substantial rights." *United States v. Robinson*, 627 F.3d 941, 954 (4th Cir. 2010) (internal quotation marks and alterations omitted). "Even when this burden is met, we have discretion whether to recognize the error, and should not do so unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Hargrove*, 625 F.3d 170, 184 (4th Cir. 2010) (internal quotation marks omitted), *cert. denied*, 80 U.S.L.W. 3189 (U.S. Oct. 3, 2011) (No. 11-5287).

As an initial matter, it is not entirely clear that the time limits of Rule 32(f)(1) constrain the government's ability to challenge a defendant's eligibility for safety-valve sentencing. The safety-valve statute *requires* the district court to give the government an opportunity to express its views about the applicability of the statute, *see* 18 U.S.C. § 3553(f) (court must "impose a sentence . . . without regard to any statutory minimum sentence, if the court finds at sentencing, *after the Government has been afforded the opportunity to make a recommendation*," that defendant satisfied the statutory requirements (emphasis added)), and it is not apparent to us that the court's statutory obligation to seek out the government's views should be affected by the government's failure to timely object to a PSR's safety-valve recommendation.

In any event, assuming the time limits of Rule 32(f)(1) apply, we note that the district court under Rule 32 has the authority to change the time limits for good cause. *See* Fed. R. Crim. P. 32(b)(2). Given Aidoo's failure to question the timeliness of the government's objection, the district court's decision to hear the government's objection may be treated as an implicit finding of the existence of good cause. *See United States v. Archuleta*, 128 F.3d 1446, 1452 n.12 (10th Cir. 1997) ("[N]o explicit finding of good cause is necessary" when defendant failed to contemporaneously object to consideration of government's untimely objection to recommendation in PSR.). It seems to us that, if nothing else, the government's right under the statute to express its views on the applicability of the safety valve would constitute good cause to modify the time limits and treat the government's sentencing memorandum as timely filed. Aidoo, however, does not even attempt to argue against the existence of good cause, and he therefore has failed to establish that the district court erred, much less plainly erred, by hearing the government's views on his safety-valve eligibility.

Moreover, even if Aidoo could satisfy the first three prongs of the plain-error standard, the claimed error in this case is not sufficiently serious to require us to exercise our discretion to correct it. *See Robinson*, 627 F.3d at 959 ("Plain error review exists to correct only the most grievous of unnoticed errors."). As previously discussed, the district court was statutorily required to make an independent determination of Aidoo's eligibility, and Aidoo bore the burden of proving to the district court that he had satisfied the requirements of § 3553(f). Neither the court's obligation to independently determine Aidoo's eligibility nor Aidoo's obligation to prove his eligibility was affected or relieved by the unobjected-to recommendation in the PSR. *See United States v. McLean*, 951 F.2d 1300, 1302-03 (D.C. Cir. 1991) (A defendant seeking an acceptance-of-responsibility reduction "must be prepared to carry his burden of convincing the court by a preponderance of the evidence that he is entitled to it. The favorable recom-

mendation of the probation officer does not relieve him of the burden. Neither does the government's failure to object." (citation omitted)); *United States v. White*, 875 F.2d 427, 431 (4th Cir. 1989) (district court's decision to give acceptance-of-responsibility reduction "is not controlled by the presentence report recommendation, nor is the district court required to apply it simply because the government did not specifically object to its proposed application").

Accordingly, whether or not the government formally objected, Aidoo was obligated by the operation of § 3553(f) itself to come to court prepared to prove his entitlement to safety-valve sentencing by convincing the district court that he had provided complete, truthful disclosure to the government. While Aidoo now contends that he would have been "better positioned" to respond to the government's views if the government had filed a timely, formal objection to the PSR, the government's opposition to safety-valve sentencing was known throughout the proceedings. The government informed Aidoo at the end of the proffer session that it did not believe he qualified under the statute, the plea agreement spelled out the government's opposition to safety-valve sentencing, and the government reiterated that opposition in its sentencing memorandum filed six days before sentencing. Aidoo did not argue below that he needed additional time to gather evidence to counter the government's position or otherwise suggest that he was surprised by the government's opposition to application of the safety valve. And even on appeal, Aidoo identifies no argument that he would have made or evidence that he would have presented to support his claim of truthful disclosure if the government had filed a formal objection to the PSR that was timely under Rule 32(f)(1).

Under these circumstances, we cannot conclude that the fairness, integrity or public reputation of judicial proceedings was seriously affected by the district court's decision to consider the government's views notwithstanding the government's failure to file a timely formal objection to the PSR's

safety-valve recommendation. *See Hargrove*, 625 F.3d at 184. Aidoo has thus failed to carry his burden under plain-error review of establishing that he is entitled to relief for the asserted Rule 32 error. *See United States v. Byers*, 649 F.3d 197, 213 (4th Cir. 2010) ("Plain error review is strictly circumscribed, and meeting all four prongs is difficult, as it should be." (internal quotation marks and alteration omitted)), *cert. denied*, 80 U.S.L.W. 3238 (U.S. Oct. 17, 2011) (No. 11-6371).

## IV.

To summarize, we reject Aidoo's claims that the district court applied the wrong legal standard and that the government's failure to timely object to the PSR should have precluded the court's consideration of the government's objection to application of the safety valve. We likewise reject Aidoo's challenges to the district court's denial of relief under § 3553(f). Aidoo bore the burden of proving that he had provided truthful and complete disclosure to the government, but he presented no evidence compelling such a conclusion. The district court committed no error when concluding that Aidoo's international-clothes-buying story was false, and that conclusion provided a proper basis for the court's rejection of Aidoo's claim that he was entitled to sentencing under the safety valve. Accordingly, we hereby affirm Aidoo's sentence.

*AFFIRMED*

GREGORY, Circuit Judge, dissenting:

Mr. Aidoo challenges the district court's standard of eligibility for safety valve relief under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2(a) and the court's failure to apply the provision to his sentencing.

Both at the scene of his arrest and during his safety valve proffer, Aidoo provided all information he could to the gov-

ernment about the source of the narcotics he ingested, his travel itinerary, his destination, his contact in the United States, his promised compensation, and the quantity of narcotics involved in his offense. Despite his exhaustive proffer, the district court deemed Aidoo ineligible for the safety valve based upon the government's speculation that Aidoo was untruthful about previous travel on his passport and that this previous travel *must have been* related to the instant offense. More is required under the law than such conjecture. As such, I respectfully dissent.

## I.

At best, the record in this case supports the government's speculation that Aidoo was less than truthful about his past international travel. Lying about irrelevant prior activities, however, does not impact a § 5C1.2 determination. *See United States v. Miller*, 179 F.3d 961, 968 (5th Cir. 1999). As such, even where the district court credits a claim of untruthfulness, it is still tasked with determining whether the allegedly less-than-truthful assertions caused the defendant to forfeit his right to application of the safety valve provision.

With regard to this determination, the district court held that "*if* Aidoo was an experienced heroin smuggler, then he was required to advise the government of that fact and explain his experience . . . ." (emphasis added). This overbroad reading of § 5C1.2 required Mr. Aidoo to do much more than is required under the law. Contrary to the district court's contention, Aidoo was not required to "come clean" to the government about all prior illegal activity. To secure safety valve relief, a defendant must only "truthfully provide . . . all information and evidence the defendant has concerning the offense or offenses that were *part of the same course of conduct* or of a *common scheme or plan* . . . ." U.S.S.G. § 5C1.2(5) (emphasis added).

Although § 5C1.2 does not define "course of conduct" or "common scheme or plan," the advisory guidelines do. Under

the advisory guidelines, offenses are part of a "common scheme or plan" when they are "substantially connected to each other by at least one common factor such as common victims, common accomplices, common purpose or similar modus operandi." U.S.S.G. § 1B1.3, comment. (n.9(A)). "Offenses that do not qualify as part of a common scheme or plan may qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Id.* at comment. (n.9(B)). Factors appropriate to this determination include the degree of similarity of the offenses, the regularity of repetitions of the offenses, and the time interval between the offenses. *Id.*

In this case, a conclusion that Aidoo's false proffer defeated safety valve reduction requires three determinations: (1) that Aidoo lied about international travel, (2) that Aidoo's lies about international travel were in fact lies *about prior involvement with drug activity*, and (3) if so, that these prior drug activities qualify as part of the "same course of conduct" or "common scheme or plan" as the offense of conviction.

As to the first determination — whether Aidoo did in fact lie in his proffer—the district court credited the government's speculation that Aidoo was untruthful about previous travel on his passport because his explanation for how he afforded the travel was implausible. Aidoo is a dual-citizen of the Netherlands and Ghana. His passport reflects various travel stamps that indicate entry into and exit from Ghana. When asked to justify the reasons for his past international travel, Aidoo explained that he purchased clothing in European nations for resale in Africa. The government cited its disbelief of Aidoo's justification by summarily contending it is impossible to make money in this fashion. Absent data or other empirical evidence, the district court credited this speculation as grounds for denying safety valve relief.

Even assuming for the sake of argument that Aidoo did lie about his reasons for past travel, there is no detail in the

record regarding Aidoo's prior travel activities, apart from passport stamps and an "implausible" explanation, to support the necessary inference that Aidoo's travel must have been related to *drug* activities. Aidoo could have been lying about smuggling clothing or his involvement in any number of illegal or legal activities of no relevance to the safety valve determination. The fact that Aidoo failed to sufficiently justify prior stamps in his passport does not support the district court's leaping inference that Aidoo is "an experienced heroin smuggler" — an assumption upon which the district court relied in articulating its standard of eligibility for safety valve relief.

Finally, even if we were to credit the government's claim that Aidoo's acknowledgment of the prior drug intelligence in his plea agreement was somehow an admission that he had been involved in drug smuggling before — a point Aidoo vehemently denies — there is still no detail about this alleged prior drug activity that would permit the district court to make the third necessary determination to deny safety valve relief. Nothing is present in the record about this speculated prior activity that would permit the district court to determine Aidoo lied about an incident *that was part of* the "same course of conduct or a common scheme or plan" as required by the Guidelines. U.S.S.G. § 5C1.2(5). A recommendation to deny safety valve relief cannot simply rest on a claim — even a substantiated one — that a defendant was involved in past drug activity. *Miller*, 179 F.3d at 964.

In that respect, the instant matter bears striking resemblance to our sister circuit's decision in *Miller*. While *Miller* is not controlling precedent, it certainly is persuasive. In *Miller*, the defendant was convicted of possession with intent to distribute cocaine for the possession of over two kilograms of cocaine. *Id.* at 963. Unlike Aidoo, the *Miller* defendant had a documented history of significant involvement in drug sales. *Id.* Regardless, during his safety valve proffer, Miller denied prior involvement in the sale or distribution of drugs and fur-

ther claimed that he had learned how to dry cocaine for the first time before his arrest for the offense of conviction. Unlike the instant matter, the *Miller* defendant did "not contest the district court's conclusion that he lied about his prior drug activities." *Id.* at 965. Instead, he maintained that "he was not required to divulge information about the two previous drug-related incidents because they were not 'part of the same course of conduct or of a common scheme or plan' as required by the Guidelines." *Id.* In response, the government provided numerous documented similarities between the offense of conviction and the previous drug activity. *Id.*

Despite these factually supported connections and the fact that the *Miller* defendant had plainly lied, the Fifth Circuit held that because the "prior drug activities were not substantially connected or sufficiently related to the offense of conviction, they did not constitute a common scheme or plan or the same course of conduct within the meaning of § 5C1.2(5)." *Id.* at 965-66. The court also noted that "[i]n determining sufficient connection [between offenses], a court may consider, *inter alia*, the following factors: (1) the degree of similarity between the offenses; (2) the regularity or repetitions of the offenses; and (3) the time interval between the offenses. *Id.* at 966 (internal citation omitted). Finding that the *government* failed to connect the previous drug activity with the count of conviction, the Fifth Circuit held that the lower court erred in finding that the defendant's false proffer defeated a safety valve reduction. The same result is warranted *even more so* here. Based on virtually no record, the district court concluded that Aidoo's explanation of his previous travel *must have been* false, that this travel *must have been* related to drug smuggling trips, and that these smuggling trips *must have been* related to the offense of conviction. Even if we were to credit the district court's first two leaping inferences, the government still failed to provide sufficient facts regarding these speculated previous smuggling trips for the sentencing judge to gauge the similarity of the offenses and affirmatively connect them to the count of conviction as

*required* by the Guidelines. Absent evidence, this multi-layered speculation is insufficient to defeat the statutory entitlement of safety valve relief. Moreover, the district court's mistaken belief that it could not give Aidoo safety valve credit if *he* didn't "come clean" about *speculated* previous offenses cannot form the basis for safety valve denial.

## II.

For the reasons set forth above, Aidoo's sentence should be vacated, and the case should be remanded to the district court for resentencing with instructions to apply the safety valve provision.