**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 23-4313**

———————

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

MICHAEL HENDERSON,

        Defendant - Appellant.

———————

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston.  Irene C. Berger, District Judge.  (2:22−cr−00065−1)

———————

Argued:  September 12, 2025               Decided:  November 17, 2025

———————

Before DIAZ, Chief Judge, and WILKINSON and WYNN, Circuit Judges.

———————

Affirmed by published opinion.  Chief Judge Diaz wrote the opinion, in which Judge Wilkinson and Judge Wynn joined.

———————

**ARGUED:**  Jonathan D. Byrne, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant.  Erik S. Goes, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.  **ON BRIEF:**  Wesley P. Page, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, South Carolina, for Appellant.  William S. Thompson, United States Attorney, Monica D. Coleman, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

———————

DIAZ, Chief Judge:

A district court sentenced Michael Henderson to 188 months in prison for possessing 500 grams or more of methamphetamine with the intent to distribute. Henderson presses two sentencing challenges on appeal. First, he claims that the district court erred when it allowed the government to make late arguments in support of two sentencing enhancements. Second, he asserts that the district court erred by applying the enhancement for possession of a firearm because the record didn't support it.

We hold that it was within the district court's discretion to consider the late arguments and that there was sufficient record evidence to support the firearm enhancement. So we affirm.

I.

A.

Law enforcement stopped a car in which Henderson was a passenger. As police searched the vehicle, a K-9 alerted to drugs in Henderson's bag. The bag contained five bags of methamphetamine, which testing later confirmed contained approximately 1,921.2 grams of pure crystal meth, also known as "ice." The officers then arrested Henderson.

While in jail awaiting trial, Henderson called various associates. On several calls, Henderson instructed the associates on how to count and distribute "sockets," "soft tools," and "hard tools," which investigators believed were code for drugs.

Henderson placed most of these calls to Bonnie Cagle. On one call, Cagle mentioned that Henderson's "brother" was coming into town. Henderson directed Cagle

2

to give his "black puppy" and "silver puppy" to his brother when he arrived. He also instructed that the black puppy should be kept at home, but his brother could carry the silver puppy.

Cagle told police that the "puppies" were guns and that "sockets," "hard tools," and "soft tools" all referred to drugs. She also told police that she had one of Henderson's guns at her home and another at her mother's house. The police later recovered a black firearm from Cagle and a silver firearm from her mother's home.

B.

1.

Henderson pleaded guilty to possessing 500 grams or more of a mixture containing methamphetamine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Before sentencing, the district court entered a scheduling order, which it later amended to extend the deadline by which the parties could submit objections to Henderson's presentence investigation report.

The presentence report recommended a two-level enhancement for possessing a firearm in connection with drug trafficking. U.S.S.G. § 2D1.1(b)(1). Henderson timely objected to that enhancement and to the report's "recitation of the facts and circumstances" supporting it. J.A. 71–73. The government didn't object to the report or respond to Henderson's objections.

The probation officer chose to remove the firearm enhancement recommendation. The revised report also recommended a three-point reduction for acceptance of responsibility.

3

2.

The parties then submitted sentencing memoranda to the court—Henderson argued for a below-guideline sentence of 120 months in prison, while the government requested a sentence "at the top" of the guideline range. J.A. 19–23, 24–28. After receiving the sentencing memoranda, the district court ordered supplemental briefing on whether Henderson qualified for "safety valve" relief under 18 U.S.C. § 3553(f).

The safety valve statute allows a district court to impose a sentence without regard to the mandatory minimum if:

> **(1)** the defendant does not have—
>
>> **(A)** more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;
>>
>> **(B)** a prior 3-point offense, as determined under the sentencing guidelines; and
>>
>> **(C)** a prior 2-point violent offense, as determined under the sentencing guidelines;
>
> **(2)** the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> **(3)** the offense did not result in death or serious bodily injury to any person;
>
> **(4)** the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
>
> **(5)** not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . .

4

18 U.S.C. § 3553(f).[1]

But the government argued that Henderson didn't qualify for safety valve relief because he didn't satisfy prongs (f)(2), (f)(4), and (f)(5): he possessed firearms in connection with his offense, led or supervised others, and failed to truthfully provide the government with all information he had about the offense. And for the first time, the government objected to the presentence report's lack of sentencing enhancements.

The government said the district court should apply enhancements for Henderson's possession of a firearm under U.S.S.G. § 2D1.1(b)(1) and leadership role under U.S.S.G. § 3B1.1(c). The government also argued that the district court shouldn't reduce Henderson's sentence for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

Henderson responded that the government forfeited these arguments because it hadn't timely objected to the report's recommendations.

3.

The district court found that the government hadn't forfeited its enhancement arguments because they related to the court's request for more briefing. In any event, the court added, it had an independent obligation to correctly calculate the guideline range.

The court then reviewed the facts in the presentence report and found that both the firearm and leadership enhancements applied. It concluded that Henderson constructively

---

[1] The district court's order came on the heels of our decision in *United States v. Jones*, 60 F.4th 230 (4th Cir. 2023), which held, for the first time, that § 3553(f)(1) only barred a defendant from safety valve relief if he satisfied *all* the listed criminal history characteristics. *Id.* at 239. Henderson's criminal history didn't disqualify him from safety valve relief under the *Jones* framework, so the district court's order assessed whether he could satisfy the remaining statutory criteria.

5

possessed firearms in connection with his drug trafficking operation, and that he managed or supervised others involved in drug distribution.

The court also concluded that Henderson wasn't entitled to safety valve relief. 18 U.S.C. § 3553(f)(4) bars relief if the defendant was "an organizer, leader, manager, or supervisor of others in the offense." Because Henderson qualified for the leadership role enhancement, that meant he couldn't receive safety valve relief.

The district court also found that Henderson didn't "truthfully provide[]" all the information he had about the offense to the government, as required by § 3553(f)(5). Henderson's guilty plea alone wasn't enough to satisfy this prong, and the court concluded that he hadn't provided the government with important information regarding the source of his drugs, his accomplices, his customers, and details about how he transported and sold the drugs.[2]

## C.

At sentencing, Henderson didn't object to the facts contained in the presentence report. So the district court adopted those facts.

The district court then calculated Henderson's guideline range. Henderson started with a base offense level of 36 for possessing at least 1.5 kilograms of pure methamphetamine, or "ice." The court then added two points each for the firearm and

---

[2] At the same time, the district court found that the firearm enhancement didn't affect Henderson's eligibility for safety valve relief under § 3553(f)(2), because he only possessed the firearm in connection with "relevant conduct," not the underlying "offense of conviction." J.A. 54–55.

leadership enhancements and subtracted three points for acceptance of responsibility, for a final offense level of 37.  Combining that with Henderson's criminal history category, the district court found an advisory guideline range of 292 to 365 months in prison.

But the court noted that if the seized methamphetamine had been a mixture instead of "ice," the guideline range would instead be 188 to 235 months.  So it applied the lower range and sentenced Henderson to 188 months' imprisonment and five years of supervised release.

This appeal followed.

## II.

We start with Henderson's claim that the government made untimely arguments for sentencing enhancements.

## A.

We review sentencing decisions, including a decision to consider untimely objections to a presentence report, for abuse of discretion.  *See United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007); *United States v. McCollum*, 80 F. App'x 825, 827 (4th Cir. 2003) (per curiam).  We won't reverse the district court simply because we may have come to a different result in the first instance.  *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022).  Instead, we look for "significant procedural errors" that tainted the sentence.  *Pauley*, 511 F.3d at 473.  Such errors include whether the district court failed to properly calculate the guideline range, relied on clearly

erroneous facts, or otherwise acted in an arbitrary or irrational manner. *See id.*; *Nicholson*, 42 F.4th at 197.

B.

Parties must submit objections to the presentence report within fourteen days of receipt. Fed. R. Crim. P. 32(f)(1). Even so, a district court "may, for good cause, allow a party to make a new objection at any time before sentence is imposed." Fed. R. Crim. P. 32(i)(1)(D).

Here, the district court extended the fourteen-day cutoff. But that new deadline came and went without any objections from the government. So we must consider whether the district court's request for supplemental briefing constituted "good cause" for the government to then pursue sentencing enhancements. We conclude that it did.

Henderson argues otherwise because the court didn't explicitly ask the parties to discuss sentencing enhancements in their supplemental briefs. But district courts have wide latitude to decide what constitutes good cause, and their findings can be made implicitly. *See United States v. Aidoo*, 670 F.3d 600, 612 (4th Cir. 2012).

The district court asked for briefing on "(a) the implication of *Jones*, and (b) whether Mr. Henderson me[t] the remaining safety valve criteria." J.A. 30. Sentencing enhancements are naturally part of that discussion, because whether Henderson qualified for certain enhancements informed whether the safety valve applied.

The district court found Henderson ineligible for safety valve relief because he qualified for the leadership role enhancement. And while the court found otherwise when considering the firearm enhancement, it had to review the facts supporting the enhancement

8

to make that decision. In short, because the court's request for supplemental briefing fairly implicated the relevant enhancements, the request constituted an implicit finding of good cause for the government's new arguments.

Regardless, district courts have an independent obligation to properly calculate the applicable guideline range. *See Gall v. United States*, 552 U.S. 38, 50 (2007). In doing so, they aren't limited to the parties' arguments or the recommendations in the presentence report. *See United States v. White*, 875 F.2d 427, 431 (4th Cir. 1989). So the government's failure to timely object to the presentence report didn't relieve the district court of its independent duty to calculate Henderson's proper guideline range, which includes consideration of applicable enhancements. *See Aidoo*, 670 F.3d at 612.

The district court independently assessed the relevant facts—once in its order on safety valve relief, and again at Henderson's sentencing—before deciding the two enhancements should apply. We have no reason to think that the court would have viewed the facts differently or failed to apply the enhancements in the absence of the government's arguments. So any error in considering the objections was harmless.

### III.

We turn next to Henderson's objection to the firearm enhancement.

### A.

We review a district court's factual findings, including whether a particular sentencing enhancement applies, for clear error. *See United States v. Banks*, 10 F.3d 1044, 1057 (4th Cir. 1993). Here again, we can't reverse "simply because we would have decided

9

the case differently." *United States v. Manigan*, 592 F.3d 621, 631 (4th Cir. 2010) (citation modified). Rather, clear error exists only if, "on the entire evidence, we are left with the definite and firm conviction that a mistake has been committed." *Id.* (citation modified).

B.

U.S.S.G. § 2D1.1(b)(1) provides for a two-level enhancement if the defendant possessed "a dangerous weapon (including a firearm)." The enhancement applies when the defendant possessed the weapon "in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction." *United States v. McAllister*, 272 F.3d 228, 233–34 (4th Cir. 2001) (citation modified).

But the government needn't prove "precisely concurrent acts, such as a gun in hand while in the act of storing drugs." *Manigan*, 592 F.3d at 629 (citation modified). Evidence (including circumstantial evidence) of constructive possession is enough. *Id.*

The government meets its burden by showing "the defendant exercised, or had the power to exercise, dominion and control over the item." *United States v. Moye*, 454 F.3d 390, 395 (4th Cir. 2006) (citation modified). In deciding this issue, a district court may "take reasonable account of the settled connection between firearms and drug activities." *Manigan*, 592 F.3d at 629.

The facts in the presentence report show that Henderson constructively possessed firearms. Henderson continued running his drug trafficking operation from jail over the phone. On one call, he instructed Cagle to make sure his "brother" received two firearms when he arrived in town—a black gun to keep in his house and a silver one to carry. That

10

evidence sufficed for the district court to find that Henderson exercised control over the weapons.

The district court also reasonably found that Henderson possessed the weapons in connection with his drug trafficking business. Henderson directed Cagle (who herself was involved in the drug scheme) to give his guns to his brother, who was coming into town to assist with the operation. And law enforcement recovered one of the firearms Henderson described from Cagle's home, showing that the weapons were connected to drug activity. *See Manigan*, 592 F.3d at 631 (a district court may infer that "a handgun seized from the residence of a drug trafficker was possessed in connection with his drug activities").

We discern no clear error in the court's decision to apply the firearm enhancement.

C.

Finally, Henderson claims that the district court incorrectly relied on disputed facts when it applied the firearm enhancement. Recall that Henderson lodged several objections to the presentence report, including to the "recitation of the facts and circumstances regarding the guns" and the application of the firearm enhancement. J.A. 71. While the probation officer removed the proposed enhancement, she didn't change the facts in the report.

Henderson now argues that he didn't need to alert the district court to his objections, but at the same time, he says the court erred by treating the facts as undisputed. He claims that if the court had seen his objections to the report before ruling on the enhancement, it "may have reached a different conclusion." Appellant's Br. at 23.

11

But we can't fault the district court for not addressing objections it didn't know about.  Henderson didn't raise any factual disputes to the court in his supplemental brief. And at sentencing, he told the court that he didn't object to the facts in the report.

Henderson asserts that he didn't need to raise objections in his supplemental brief because, at that time, the presentence report contained no recommendations for enhancements and no objections from the government.  But the district court's request for supplemental briefing on the safety valve criteria put the parties on notice that they needed to address facts relevant to the firearm and leadership enhancements.  If Henderson had concerns about how the report described the facts, he should have said so then.

Because he didn't, Henderson forfeited any objections to the facts supporting the firearm enhancement.  *See United States v. Brack*, 651 F.3d 388, 392 (4th Cir. 2011).

Our review then is limited to plain error.  *United States v. Hamilton*, 701 F.3d 404, 410 (4th Cir. 2012).  To prevail, Henderson must show that "an error (1) was made, (2) is plain (i.e., clear or obvious), and (3) affects substantial rights."  *Id.* (citation modified).

A sentencing error affects a defendant's substantial rights only if, "absent the error, a different sentence might have been imposed."  *United States v. Hernandez*, 603 F.3d 267, 273 (4th Cir. 2010).  Henderson can't satisfy this prong, because he hasn't made any non-speculative argument that the district court would have issued a lesser sentence if it had reviewed his factual objections before ruling on the enhancement.

\*　　\*　　\*

For these reasons, we affirm the district court's judgment.

*AFFIRMED*

12