UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-1567

N.O., a minor by Christine Orwig, her Mother and Next Friend; CHRISTINE ORWIG,

Plaintiffs – Appellants,

v.

MARC ALEMBIK, M.D.; ABOUT WOMEN, OB/GYN, P.C.,

Defendants – Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  T. S. Ellis, III, Senior District Judge.  (1:15-cv-00868-TSE-JFA)

Argued:  March 23, 2017                                  Decided:  June 6, 2017

Before DUNCAN, AGEE, and KEENAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Mikhael David Charnoff, PERRY CHARNOFF PLLC, Arlington, Virginia, for Appellants.  J. Jonathan Schraub, SANDS ANDERSON PC, McLean, Virginia, for Appellees.  **ON BRIEF:** Scott M. Perry, PERRY CHARNOFF PLLC, Arlington, Virginia; Catherine Bertram, Laurie Amell, BERTRAM & AMELL, Washington, D.C., for Appellants.  Paige Levy Smith, SANDS ANDERSON PC, McLean, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Christine Orwig, individually and in her representative capacity for her daughter, N.O. (collectively, "Orwig"), filed a complaint in the district court against Dr. Marc Alembik and About Women, OB/GYN, P.C. (collectively, "Alembik"), alleging medical malpractice under Virginia law. A jury returned a defense verdict for Alembik. On appeal, Orwig contends that the district court committed three errors, each of which entitles her to a new trial. In particular, she argues that the district court erred in: (1) allowing two defense experts to testify that Alembik had not violated a standard of care, (2) electing not to strike a sleeping juror, and (3) allowing a defense expert to give an opinion that was not properly disclosed in a Rule 26 expert report. For the reasons that follow, we affirm the district court's judgment.

I.

A.

During Orwig's pregnancy, Alembik was her obstetrician. The day of N.O.'s birth, Orwig complained to Alembik of pressure and bleeding. Alembik ran tests and wrote in Orwig's chart that she faced "probable impending chorioamnionitis." J.A. 526.1. Later in the day, Alembik wrote at other places in Orwig's medical records "chorioamnionitis" or "chorio," without the words "probable" or "impending."

Chorioamnionitis, or "chorio," is an infection that can occur after uterine membranes rupture, compromising the integrity of the uterus and threatening the health of the fetus. *See* J.A. 181, 358. Two types of bacteria can cause chorio: gram-positive

3

or gram-negative. No single antibiotic treats both of these bacteria; each requires a distinctive drug treatment. The antibiotic Clindamycin only treats gram-negative chorio, while the antibiotic Gentamicin only treats gram-positive chorio. Because it is difficult to determine which type of chorio a patient has before giving birth, doctors frequently administer both antibiotics simultaneously. During the birthing process, Alembik prescribed only Clindamycin, the gram-negative antibiotic, for Orwig.

N.O. was born prematurely and suffered a Grade III brain bleed, a common complication of premature birth and untreated chorio. A post-birth analysis of Orwig's placenta showed that she was afflicted with gram-*positive* chorio, which would have required Gentamicin in order to be effectively treated. N.O. now suffers from hydrocephalus and cerebral palsy.

### B.

Orwig sued Alembik in the United States District Court for the Eastern District of Virginia, alleging that Alembik was liable for medical malpractice under Virginia law for his treatment and care of her and N.O. In view of the complete diversity of citizenship of the parties, the district court had subject matter jurisdiction under 28 U.S.C. § 1332.

At trial, Orwig argued that Alembik had in fact diagnosed her with chorio. As a consequence, Orwig alleged Alembik had violated the standard of care by treating her for gram-negative chorio only, not for both gram-positive *and* gram-negative chorio. As part of his defense, Alembik argued that he had not diagnosed Orwig with chorio; that such a diagnosis was not indicated under the appropriate standard of care; and, therefore, that there was no medical protocol requiring treatment for chorio. Over Orwig's objection,

4

Alembik called expert witnesses who testified that a reasonable doctor would not have made the diagnosis as alleged by Orwig.

Alembik also offered expert testimony to demonstrate a lack of causation. In particular, Alembik presented two expert witnesses who testified that, even if he had tried to treat both gram-positive and gram-negative chorio, there would have been too little time between the purported diagnosis and N.O.'s birth for the medicine to have any effect on N.O.'s condition. Orwig unsuccessfully challenged the testimony of one expert witness, arguing that Alembik had not properly disclosed his causation opinion before trial, as required by Federal Rule of Civil Procedure 26(a)(2).

At the close of all evidence, before the district court submitted the case to the jury, Orwig moved to strike Juror 25. Earlier during the trial, Orwig had alerted the district court that she observed Juror 25 sleeping during the testimony of one of her experts. Throughout the rest of the six-day trial, the district court and parties continually observed the purportedly sleeping juror. The district court eventually denied the motion, noting that Juror 25 had appeared attentive during the remainder of the trial.

The jury returned a verdict in favor of Alembik, and the district court entered judgment accordingly. Orwig filed a timely appeal, and this Court has appellate jurisdiction under 28 U.S.C. § 1291.

II.

We review each of the issues before us under an abuse of discretion standard. *United States v. Hager*, 721 F.3d 167, 190 (4th Cir. 2013) (noting that this Court reviews

5

a district court's decision to refrain from striking a juror for abuse of discretion); *United States v. Lighty*, 616 F.3d 321, 351 (4th Cir. 2010) (observing that a district court's evidentiary rulings are reviewed for abuse of discretion); *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 (4th Cir. 2003) ("We review the imposition of discovery sanctions for abuse of discretion."). "A district court abuses its discretion when it acts in an arbitrary manner, when it fails to consider judicially-recognized factors limiting its discretion, or when it relies on erroneous factual or legal premises." *United States v. Henry*, 673 F.3d 285, 291 (4th Cir. 2012).

### III.

### A.

Prior to trial, Orwig filed a motion *in limine* seeking to preclude two of Alembik's expert witnesses, Dr. Norwitz and Dr. Dudley, from testifying that Alembik did not violate the appropriate standard of care by failing to diagnose Orwig with chorio. She argued such testimony would invade the province of the jury by opining on an issue of fact, improperly bolster Alembik's testimony, and confuse the jury by directing their attention toward a standard of care issue—diagnosis—which Orwig contended was irrelevant to the resolution of what she framed as the central issue of the case—treatment.

Orwig argues that the expert testimony of Drs. Norwitz and Dudley should not have been admitted under Federal Rule of Evidence 702. Under that rule, expert testimony must (1) involve scientific, technical, or other specialized knowledge, and (2) aid the trier of fact to help understand or resolve a fact at issue. Fed. R. Evid. 702;

6

*Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999). Expert testimony also cannot be used for the sole purpose of undermining or bolstering a witness's credibility. *United States v. Lespier*, 725 F.3d 437, 449 (4th Cir. 2013) ("The assessment of a witness's credibility . . . is usually within the jury's exclusive purview.") (internal quotations omitted); *see also Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005) ("[E]xpert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702."). Orwig asserts that whether Alembik actually made the diagnosis of chorio was a factual issue within the common knowledge of the jury that should be resolved simply by examining Alembik's notes in the medical record. She argues that whether a reasonable doctor would have made that diagnosis has no bearing on whether Alembik actually did so, rendering any expert testimony on the question unhelpful under Rule 702. In addition, Orwig posits that the expert testimony was offered to bolster the credibility of Alembik's own testimony. We disagree with Orwig.

The district court did not abuse its discretion when it admitted the evidence under Rule 702. Drs. Norwitz and Dudley described the diagnosis a reasonable doctor would have made when faced with the symptoms presented by Orwig at the hospital. Such testimony certainly involved "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702(a). This specialized knowledge was also probative and helpful to resolving whether Dr. Alembik satisfied the standard of care in treating Orwig, even if he had not diagnosed her with chorio.

The expert witness testimony also did not improperly bolster Alembik's credibility. Drs. Norwitz and Dudley did not opine that Alembik had a propensity to tell the truth; they only provided a medical explanation for the reason why Alembik acted the way he claimed that he did. Such corroboration from expert testimony is permissible. *See United States v. Fuertes*, 805 F.3d 485, 496 (4th Cir. 2015) ("[T]he mere fact that expert testimony tends to corroborate the testimony of another witness is not grounds for exclusion; indeed, it is surely the case that most expert opinion evidence proffered by litigants is paired with lay evidence that is in some fashion supported by the expert opinion.").

Orwig relies on *United States v. Lespier* for the proposition that expert testimony cannot address a witness' credibility. *See* 725 F.3d at 449. But that case is inapplicable here. In *Lespier*, the Court excluded an expert's testimony about the effects of sleep deprivation offered to account for inconsistencies in a lay witness' testimony on the grounds that "the effects of sleep deprivation . . . w[ere] readily comprehended by jurors and d[id] not require an expert for their explanation." *Id.* Unlike sleep deprivation, whether Orwig presented symptoms a reasonable doctor would recognize as chorio is a question outside a juror's common knowledge. Neither Dr. Norwitz nor Dr. Dudley opined on Alembik's memory or character for truthfulness. Thus, their testimony did not bolster Alembik's credibility in a prohibited way.

Rule 403 provides that otherwise relevant evidence may be excluded if its probative value is "substantially outweighed" by its prejudicial or confusing effect. Fed. R. Evid. 403; *United States v. Williams*, 445 F.3d 724, 730 (4th Cir. 2006) ("[T]he

8

mere fact that the evidence will damage the defendant's case is not enough—the evidence must be *unfairly* prejudicial, and the unfair prejudice must *substantially* outweigh the probative value of the evidence."). Orwig contends the expert testimony of Drs. Norwitz and Dudley had a tendency to confuse the jury and the district court abused its discretion in not excluding it. Again, we disagree with Orwig.

As noted above, Drs. Norwitz and Dudley's testimony had substantial probative value: it tended to show that Alembik did not diagnose chorio and helped the jury understand why he would not have made such diagnosis. Additionally, it did not cause prejudice or confuse the jury. On the contrary, it offered clarity. In the absence of the testimony, the jury may have assumed both parties agreed that Alembik should have made a chorio diagnosis, especially after Orwig's own expert witness affirmatively stated that Alembik's alleged diagnosis of chorio was "correct[]," although that diagnosis had been made after N.O.'s birth. J.A. 240, 244. The district court did not abuse its discretion by allowing Drs. Norwitz and Dudley's testimony to challenge Orwig's assertion that Alembik diagnosed chorio before N.O.'s birth and to explain that there was no medical consensus on the subject.

Finally, Orwig argues that the expert witness testimony must have confused the jury in light of the imprecisely worded verdict form used by the jury. The verdict form asked the broad question of whether Alembik "was negligent by failing to meet the standard of care in the care and treatment of the plaintiffs" rather than only whether Alembik breached the standard of care in his treatment of the plaintiffs. J.A. 665. Irrespective of whether the jury instructions or verdict form were misleading, Orwig

9

failed to preserve this issue for appellate review. "[T]o preserve an objection to the instructions to the jury, a party is required to point out specifically the nature of the objection." *Mattison v. Dallas Carrier Corp.*, 947 F.2d 95, 112 (4th Cir. 1991). Orwig made no objection to the verdict form or jury instructions at trial. In fact, when asked by the district court about the content of the verdict form, Orwig's counsel responded, "It's fine." *See* Transcript of Proceedings Held 4-20-16 at 4, *N.O. v. Alembik*, No. 1:15-cv-868-TSE-JFA (E.D. Va. 2014) ("[The court]: If you have a specific objection as to why [the verdict form is] unlawful, I want to know it . . . . [Orwig]: It's fine your Honor.").

In sum, this issue fundamentally arises out of a trial calculation on Orwig's part: she strove to focus the case's battle of the experts purely on the issue of Alembik's treatment of Orwig, apparently confident that Alembik's notations of "chorio" in the medical record made the question of whether he diagnosed the condition in the first place a minor factual issue. Alembik saw the case differently. He testified that he did not diagnose chorio and introduced two experts who testified that he did not violate the standard of care in failing to do so. Rather than adjust her strategy, Orwig instead filed a motion intended to limit how Alembik could present his defense. The district court did not abuse its discretion in denying that motion.

B.

Orwig and her attorney represented to the district court that Juror 25 was asleep during the testimony of one of Orwig's expert witnesses. However, Orwig's counsel did not bring this to the attention of the court when the alleged event occurred, but rather waited until the end of the day—when the jury was out of the room, and Juror 25

10

presumably had awoken—to alert the judge. The following morning, Orwig moved the court to strike Juror 25. Though no one else in the courtroom witnessed the juror sleeping, the district court stated that it did not "doubt that it occurred and . . . that it was not minimal," but elected to observe Juror 25 for the remainder of the proceeding to "add confirmation" that the juror slept. J.A. 332.

Orwig and her counsel represented to the court that Juror 25 slept through a portion of the testimony of her expert, Dr. Mittal, a pathologist, who testified that his post-delivery analysis of Orwig indicated the existence of chorio. Dr. Mittal's testimony went unrebutted. Indeed, Alembik agrees that Orwig was diagnosed with chorio after giving birth to N.O. However, neither party referenced Dr. Mittal's testimony again, even during closing arguments. Because neither the judge nor any party witnessed Juror 25 be inattentive or fall asleep for the remainder of the trial, the district court denied Orwig's motion to strike the juror: "[I]t just seems to me that the part that you complained about is small enough when I consider it in the scope of everything else we have been watching ever since, carefully, that I am not moved." J.A. 597. At the conclusion of the trial, the district court selected a six-member jury from an eight-member venire, leaving two alternates. The six-member jury included Juror 25.

On appeal, Orwig argues that the district court abused its discretion by not striking Juror 25 in favor of one of the alternates. We disagree.

"If sleep by a juror makes it impossible for that juror to perform his or her duties or would otherwise deny [a party] a fair trial, the sleeping juror should be removed from the jury." *United States v. Freitag*, 230 F.3d 1019, 1023 (7th Cir. 2000). The district

11

court "is not invariably required to remove sleeping jurors, and . . . has considerable discretion in deciding how to handle" the matter. *Id.* (internal citation omitted). "Indeed, [a district court's] decision not to excuse a juror for cause is entitled to special deference." *Hager*, 721 F.3d at 190 (internal quotations omitted).

Even if we assume, as did the district court, that Juror 25 slept for some unknown portion of a single witness' uncontested testimony, there is no contention that the juror missed any other part of the lengthy proceeding. Further, the parties' actions demonstrate how unimportant Dr. Mittal's testimony was: Alembik accepted it without dispute, Orwig waited until the end of the day to alert the court that a juror may have missed it, and neither party referenced it in their closing argument. Even on appeal, beyond summarily labeling the testimony as "important," Orwig cannot articulate how she was prejudiced by Juror 25 missing Dr. Mittal's testimony. We therefore conclude that the district court did not abuse its discretion when it declined to strike the juror, especially in light of the wide latitude granted trial judges to make such determinations. *See Freitag*, 230 F.3d at 1023–24 (finding no abuse of discretion where there was no evidence that "the sleeping juror missed large portions of the trial or that the portions missed were particularly critical"; noting that the district court "had not noticed an extensive sleeping problem," and had "admonished counsel on both sides to alert her to any further sleeping episodes").

## C.

Orwig's final challenge concerns the adequacy of Alembik's Rule 26 expert disclosure regarding causation. However, because we conclude that the district court did

not err with regard to the issue addressed above, and because the jury did not reach the issue of causation, we need not resolve whether Alembik's expert disclosures complied with Rule 26 or were substantially justified or harmless under Rule 37.[*]


IV.

For the foregoing reasons, the district court's judgment is

*AFFIRMED*.

---

[*] Were we to reach the issue of causation, and assuming, without deciding, that Dr. Norwitz' Rule 26 report did not provide a "complete statement of all [his] opinions," the admission of his causation testimony was harmless. Dr. Dudley also testified that Alembik did not cause Orwig's injuries, essentially offering the same expert testimony as Dr. Norwitz. *Compare* J.A. 385 (Dr. Norwitz testifying, "[Gentamicin] would not have changed the outcome at all"), *with* J.A. 557 (Dr. Dudley testifying, "I just can't see how [Gentamicin] would possibly change the outcome for this child[.]"). Dr. Dudley fully disclosed his causation opinion and stated it in his testimony, all without objection by Orwig. This makes Dr. Norwitz' testimony merely cumulative of Dr. Dudley's and its admission harmless. *See Williams*, 445 F.3d at 736 ("Even if we were to conclude that evidence of Williams's failure to answer Bartee's question was improperly admitted, the error would be harmless, because the evidence was cumulative to other unobjected-to evidence.").